GEORGE WINSLOW ET AL. v. ISAAC N. JENNESS AND GER-
TRUDE SMITH.

[See 58 Mich. 280.]

*Equity—Joinder of grievances.—Multifariousness.*

The *general* rule in equity is that *several* grievances must be redressed
by *several* proceedings, the only recognized exceptions being
where a *single* right is asserted on one side which affects *all* the
parties on the other side in the *same* way, or a *single* wrong is
complained of which falls on them *all* simultaneously and
together. Familiar instances are rights in common which are
resisted by the owner of the estate on which it is charged, tax
rolls assessing all parties on an equal ratio, and frauds by trustees
affecting all the beneficiaries. If there is any distinction in the
*proportion* or *character* of the several grievances, there can be
no joinder.[1]

Appeal from Lapeer. (Stickney, J.)   Argued October 28,
1886.   Decided January 6, 1887.

Bill to restrain the prosecution of 21 ejectment suits.
Demurrer, for multifariousness in the misjoinder of uncon-
nected causes of action, sustained, and bill dismissed.
Affirmed. The facts are stated in the opinion.

*Geer & Williams*, for complainants.

*Farrand & Jenks* (*J. B. Moore*, of counsel), for defend-
ants.

CAMPBELL, C. J.   This bill, which was filed in February,
1886, seeks to restrain defendant Gertrude Smith from prose-
cuting 21 ejectment suits, and to compel her to convey to the
several complainants an undivided third interest each to the
property involved in the suit in which he or she is interested.
There are no joint interests in complainants.   Each claims

---

[1] See *Barker v. Vernon Township*, 63 Mich. 516.

title to separate land, in which Mrs. Smith sets up her own title to an undivided third. Defendant Gertrude Smith demurred for multifariousness in the misjoinder of unconnected causes of action, and the demurrer was sustained, and the bill dismissed. Complainants appeal.

The case contains a recital of several matters, giving the history of various partnership matters, which are detailed in a bill formerly filed by defendant Isaac N. Jenness against his co-defendant, Gertrude Smith, to obtain the same relief which is sought here. *Jenness v. Smith*, 58 Mich. 280. The present record does not entirely conform to that. But in order to try the sufficiency of the present bill on the one question of multifariousness, it will only be necessary to give an outline of the controversy, giving complainants the advantage of all the ambiguities.

The case, thus abridged, is this: Henry Fish, father of Gertrude Smith, died intestate in May, 1876, leaving her his heir at law, 17 years of age. Before his death, he, and defendant Isaac N. Jenness, and Allen Fish (since deceased) were owners of considerable tracts of land in Michigan, including the lands here in controversy, which are in Lapeer county. They were all in partnership, under the name of I. N. Jenness & Co., and these lands, although held by tenancy in common, are claimed to have been partnership property. After Henry Fish's death, it is claimed it became necessary to continue the business and manufacture the pine left, so as to close matters out, and, after using such personal assets as could be spared without stopping the business, the debts could not be paid off without selling lands.

Allen Fish became defendant. Gertrude's guardian, and, supposing sales could not be made complete without authority to act for her, applied to the circuit court for the county of St. Clair, and obtained a decree, the substance of which is not set out, but which, it was assumed, gave him power to act for her. Had the case been otherwise sufficient, it would have

been necessary to show just what those proceedings were. After that decree, Allen Fish, for himself and also as guardian, joined in warranty deeds with Isaac N. Jenness and the widow of Henry Fish, to several parties, of the various parcels of land involved in this suit, including the complainants. or their respective grantors, for prices set forth in the bill;. and the consideration so received was used for partnership purposes. These conveyances were not made at auction or at the same time, but at private sale, and from time to time, during the year 1877. It does not appear when the contracts were made, and it is not averred that the deeds referred to the lands as partnership property, or that they were so considered by the purchasers. All that is shown as to the partnership is that the money was used for its benefit. One of the conveyances is shown to have been made in carrying out an individual land contract executed by the three partners. during Henry Fish's life-time. This piece of land is averred to have been conveyed for a valuable consideration, the amount of which does not appear, by Allen Fish, for himself and as guardian, with Mrs. Fish, to Jenness, who conveyed the land to Charles Bashaw, a complainant, and holder of the original contract.

It is assumed, and is no doubt true, that Fish's deeds as guardian were void, the sales never having been reported or confirmed. Whether any lands remained unsold does not appear, but is not important now.

Gertrude Smith has brought ejectment for her interest as heir at law, each complainant being sued separately for his or her several parcels.

The case, then, is that of a person claiming an undivided interest, which, so far as she is concerned, has never been parted with, who is sued in equity to compel her to surrender and release it to the several grantees of her co-tenants, on the assumption that they owned it all and conveyed it all equitably.

The guardian's transfers are not relied upon, and could not be relied upon, as having any part in the controversy. No equity could arise out of them. They were nullities, or else the bill had no basis.

The legal issue is, therefore, a simple one. Each of these complainants claims under a purchase which was not made under any legal proceedings, which was separate in time and in consideration from every other sale. The only alleged common equity is that the conveyances from Jenness and Allen F sh, which in law conveyed two-thirds, should be held in equity as conveying the entirety.

The bill does not even show a simultaneous origin, or a common fraud or contrivance by which these complainants were deceived. All that can be made out is that they bought of the same parties independently, and their title has failed in the same way; and no fraud or conduct of defendant in any way contributed to their difficulty.

This attempt to obtain relief by joint bill goes beyond the broadest doctrine which has been formulated anywhere. There is no common wrong and no privity among them. Their grievances are similar, and that is all that can be said in their favor.

The general rule of equity is that every several grievance must be redressed by a several proceeding. The only recognized exceptions to it (and these are considerably qualified) are instances where there is a single right asserted on one side which affects all the parties on the other side in the same way, or a single wrong which falls on them all simultaneously and together. The instances which are most familiar are rights in common which are resisted by the owner of the estate on which it is charged, tax-rolls assessing all parties on an equal ratio, frauds by trustees affecting all the *cestuis que trustent*, and the like. Here the grievances are not separate and similar, but single and uniformly injurious. And it has been held in this Court, as well as elsewhere, that, if there is

any distinction in the proportion or character of the several grievances, there can be no joinder. *Kerr v. Lansing*, 17 Mich. 34.

Where the cause of grievance does not arise out of the same wrong, affecting all at once as well as similarly, there is no foundation for any such joinder. Our own precedents have settled the doctrine sufficiently.

In the case of *Walsh v. Varney*, 38 Mich. 73, each of several complainants had purchased separate parcels under partition proceedings, which were valid as against all who were before the court, but which left out some of the tenants in common. These complainants joined in a bill to restrain ejectment suits brought by the heirs not concluded by the partition, and sought further to have the partition decree opened and extended so as to bind them. But it was held complainants had no common grievance entitling them to join, and also that they had no rights beyond their purchase. This last point bears on another difficulty in this case which is distinct from the question of multifariousness. As the bill states their case, they bought a title in which defendant purported to have an interest in her own right, and which failed apparently from a defect in the guardian's power, of which, as that decision holds, they had notice.[1] The bill does not indicate that they bought in reliance on the right of Fish and Jenness to convey the whole.

In *Bigelow v. Booth*, 39 Mich. 622, a bill was filed by complainants to redeem, basing their right on a joint interest acquired under execution. It was held that, as this joint title failed, the bill could not stand to help separate interests derived otherwise. That case, however, is not one where the particular point raised here is very clearly presented, although a bill to redeem usually includes all parties to be affected.

---

[1] "It is a well-settled doctrine that parties purchasing titles under judicial sales purchase just what can lawfully be sold, neither more nor less, and have no further rights." *Walsh v. Varney*, 38 Mich. 76.

In *Woodruff v. Young*, 43 Mich. 548, a bill filed against three defendants for fraud in hindering complainant from getting the settlement of an estate in which they were all concerned, and also for frauds committed by them separately in various dealings arising out of the same family relation-ship, but not connected with the estate, was held multi-farious, because the frauds were distinct.

In *Brunner v. Bay City*, 46 Mich. 236, it was held that parties whose lots had been sold under the same illegal as-sessment, and bid in by the city, had no longer any griev-ance for which they could join in a bill, and that each lot-owner had merely the several right to pursue the city as he would any other person having a deed which would be a cloud on his title to the separate lot. That case cannot be distinguished in principle from this. And this was on the ground that thenceforward any claim or assertion by the city against one lot could in no way affect any other lot, but must be prosecuted and defended separately. It cannot help or hinder any one of these complainants to have defendant's title made out or defeated against any of the rest. Judg-ment in one of the ejectment suits could not be shown in any of the others, and could not affect them.

It is hardly necessary to increase citations, but they are not difficult to find. In *Jones v. Garcia del Rio*, 1 Turn. & R. 297, where several persons had been induced to buy scrip in the same loan by a fraud affecting them all in the same way, but by separate purchases, Lord Eldon dismissed their bill on this sole ground. He said that the plaintiffs, if they had any demand at all, had each a demand at law, and each a several demand in equity; that they could not file a bill on behalf of themselves and the other holders of scrip; and, as they were unable to do that, they could not, having three distinct de-mands, file one bill; and, upon that ground alone, his lord-ship, without again adverting to the question of public pol-

icy (which had been raised and discussed), dissolved the in-junction. This decision was in 1823.

In 1834 the United States Supreme Court decided the case of *Yeaton v. Lenox,* 8 Pet. 123, on the same principle. There a considerable number of underwriters, taking risks on the same property and voyage, but severally, and not jointly, had paid their insurances to the same bank as holder, on the understanding that the money should be refunded if it turned out they were not liable. This having been ascertained, they joined in a bill against the trustees of the bank, which was in liquidation, its charter having expired, to recover back their funds. Chief Justice Marshall disposed of their claim very briefly, refusing to pass on the equities, which were controverted. He said:

"The plaintiffs who unite in this suit claim the return of money paid by them severally on distinct promissory notes. They are several contracts, having no connection with each other. These parties cannot, we think, join their claims in the same bill."

The principle is also recognized in Story, Eq. Pl. § 279, and Daniell, Ch. Pr. 395.

It is by no means clear from the allegations in the bill that the grievances or claims of these complainants are entirely similar in their equities. But this we do not think it necessary to discuss. Their claims, good or bad, are entirely separate, and there is no common grievance.

The decree should be affirmed, with costs.

The other Justices concurred.