𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

BOSHER ET ALS. v. R. & H. LAND CO. ET ALS.

December 8th, 1892.

STOCK SUBSCRIPTIONS—*Cancellation—Joinder of plaintiffs.*—Persons who have been induced by the same fraudulent misrepresentations to subscribe to the stock of a corporation have a common interest, and may join in a suit, for the benefit of themselves and others similarly deceived, to cancel their subscriptions.

Appeal from decree of circuit court of Rockingham county, rendered at the April term, 1892, in the cause wherein the appellants, E. J. Bosher, George W. Mayo, F. C. Christian, and John O'Toole, suing for their own benefit and that of all other stockholders having like interest with themselves, being those who subscribed to the stock of said company and were required to pay for the same at par, and being all the stockholders of the company except the promoters named in the bill, who would come in and contribute to the expense of the suit, are complainants, and the Richmond and Harrisonburg Land Company, Philip B. Sheild, and the promoters named as defendants, and unknown partners, who are afterwards named and brought in by an amended bill, are defendants. The decree being adverse to the complainants, they appealed to this court. Opinion states the case.

*F. H. McGuire,* for appellants.

*W. W. & B. T. Crump,* for appellees.

LACY, J., delivered the opinion of the court.

The bill in this case was filed in the said court in July, 1891, by the appellants, E. J. Bosher, George W. Mayo, F. C. Christian, and John O'Toole, who sued for the benefit of themselves and all other stockholders of the Richmond and Harrisonburg Land Company having like interest with themselves, being those who subscribed for the stock of the said company and were required to pay for the same at par, and being all the stockholders of the company except the promoters named in the bill, who would come in and contribute to the expense and share the benefits of the suit against the said Richmond and Harrisonburg Land Company, Philip B. Sheild, receiver, and the promoters named as defendants, and unknown partners, who are afterwards named and brought in by an amended bill, seeking to set aside their stock subscriptions, to rescind and annul their contracts of subscription, and to have repayment of the sums paid by them as subscriptions to their stock, and for general relief, upon the ground of fraud practiced upon them by the defendants in procuring their subscriptions to the stock of the company; and the bill further sets forth that, upon the discovery by them of the fraud which had been practiced upon them, the complainants had refused to pay further sums upon their contracts of subscription, upon the ground of the fraud and deceit employed against them by the defendants, and demanded back the money already paid by them, whereupon the defendants had, among themselves, instituted a suit, without notice to the complainants, seeking to enforce the payment by the complainants of their stock subscriptions not yet paid, and had a receiver appointed by the court to collect from them the said unpaid sums; and it is prayed in the bill that this suit be heard with that, and that the receiver in that suit and the other defendants be enjoined and restrained from collecting these unpaid subscriptions until the further order of the court.

To this bill the defendants demurred, and the demurrer was

sustained by the court, upon the expressed ground that this was a misjoinder of plaintiffs ; and both the original and amended bills were dismissed, the court declining to pass upon any other question in the case. Whereupon the case was brought to this court by appeal.

The circumstances and all the details of the fraud and false and fraudulent misrepresentations are set forth with great minuteness and distinctness in the bill—the false statements as to the locality of the property, and its eligibility, several times multiplying the true amount of the value and cost of the property, and false statements as to the amount of capital put in by the promoters, together with a false statement that there were no preferences in favor of the promoters—and making out a case of fraud and deceit so gross that the counsel for the appellees, in the argument in this court, admitted that, if they were true, the appellees should be arraigned in a criminal court upon them. It is not deemed necessary, however, in considering the single question involved here, " whether the plaintiffs can bring this suit jointly," to recite the charges of fraud herein. We are to consider the single question decided by the circuit court upon the demurrer for misjoinder of plaintiffs, which is, these charges, distinctly stated, being true, so far as were pleaded, then whether the plaintiffs can jointly maintain their suit.

The jurisdiction of a court of equity to rescind contracts fraudulently procured is undisputed. The appellants insist that one object to be attained by proceedings in chancery is to prevent a multiplicity of suits, and hence several persons who have a common interest, arising out of the same transaction, although their interest, strictly speaking, is not joint, may unite in one suit, and may even be compelled to do so by the defendant (citing Bart. Ch. Pr., p. 253); that it is a favorite object of equity to prevent a multiplicity of suits (Sand, Ed. 13); and that there is an exception allowed,

founded on the mere fact of numerousness, when it may amount to a great inconvenience or positive obstruction of justice (Story, Eq. Pl., §§ 96, 98) ; and insist that in this case the petitioners, and those in whose behalf they sue, are about 200 in number, are a class well defined and distinct from the promoters, necessarily antagonistic in interest to them and to the company, which they organize and control. Upon a prospectus, and upon circulars, cards, statements, &c., supplementary thereto, in which the grossest material misrepresentations were made, all the petitioners' class were induced to make contracts—all exactly alike ; all based upon said prospectus, circulars, cards, &c. ; all made with the same party, the defendant company ; and all fraudulent and void. That the company, by its agents, fraudulently, by the issue of a false prospectus and the circulation of false circulars, cards, statements, &c., induced petitioners and all stockholders of their class to subscribe for its stock and pay in their money. And the prayer is that these contracts be rescinded and the money refunded to the defrauded stockholders. That the prospectus is referred to, and made a part of each certificate of stock.

On the other hand, the appellees say that the demurrer was properly sustained to the bill by the circuit court, on the ground that each one of the four plaintiffs had a separate and distinct claim against the defendants, and hence could not unite in one bill, and, such being the case, they could not, *a fortiori,* maintain a creditors' bill ; and that the suit could not be properly defended by the defendants without filing a separate answer in each case, which would require probably 200 answers; and that the doctrine of the equitable jurisdiction of courts of equity to prevent a multiplicity of suits has no application to such a case as this, and that in this case the court is obliged to go back to the execution by each individual of his distinct and separate contract with the company, investigate the cir-

cumstances under which it was made, and determine upon its validity.    Citing Campbell, C. J., as holding that, in *Winslow* v. *Jenness*, 64 Mich. 84 : " The general rule in equity is that several grievances must be redressed by several proceedings, the only recognized exceptions being when a single right is asserted on one side, which affects all the parties on the other side in the same way, or a single wrong is complained of, which falls on them all simultaneously and together.    Familiar instances are rights in common which are resisted by the owner of the estate on which it is charged, tax rolls assessing all parties on an equal ratio, and fraud by trustees affecting all the beneficiaries.    If there is any distinction in the proportion or character of the several grievances, there can be no joinder."    And citing *Gray* v. *Rothschild*, 112 N. Y. 668, as holding that parties claiming to have been defrauded by similar, but not the same, representations, could not unite, as each had a separate cause of action ; and that the statement by Mr. Cook, in section 156 of his book on Stockholders, that several stockholders defrauded in the same way may join in the bill as co-complainants, is only a conjecture by him, and incorrect, in the light of recent decisions ; and that it was held by Lord Eldon, in *Jones* v. *Garcia del Rio*, 1 Turn. & R. 297, in a case identical with this case, that the plaintiffs could not join, nor sue on behalf of themselves and others ; " that the plaintiffs, if they had any demand at all, had each a demand at law, and each a several demand in equity ; that they could not file a bill on behalf of themselves and the other holders of scrip ; and, as they were unable to do that, they could not, having three distinct demands, file one bill— and upon that ground alone    *    *    *    dissolved the injunction."    And citing and relying on the rulings of this court in the recent case of *N. & W. Railroad Co.* v. *Smoot*, 81 Va. 495 : " That two or more parties, having distinct causes of action against the same defendant, cannot join in one suit to enforce

their rights. To enable plaintiffs to join in one suit, they must have a community of interest, such as to establish a street or to have obstructions in an existing street removed, or, as tax-payers, to restrain municipal corporations and their officers from transcending their powers in a way injurious to tax-payers."

In considering the single question in dispute as to this appeal, stated above, we will observe that is a general rule of law that if a person is induced to enter into a contract by false representations, fraudulently made by the other contracting party or his agent, the contract is voidable at the option of the innocent party. This rule applies with full force, both to contracts of membership and to contracts to purchase, or to take shares in a corporation at a future time. It may be stated, as a general rule, that, if a subscription for shares was obtained by fraudulent representations, it may be annulled by the subscriber at any time before other equities have intervened. Lord Romilly said, (*Central Railway Co.* v. *Kirsch*, L. R. 2 H. L. 89,) in considering the right of a person to be relieved of shares which he had taken upon the faith of a fraudulent prospectus issued by the company: "Contracts of this description, between an individual and a company, so far as misrepresentation or suppression of the truth is concerned, are to be treated like contracts between any two individuals. If one man makes a false statement, which misleads another, the way in which that is to be treated affords the example for the way in which a contract is to be treated when a company makes a false statement which misleads an individual." 1 Mor., Priv. Corp., sec. 95. A promoter is a person who brings about the incorporation and organization of a corporation. He brings together the persons who become interested in the enterprise, aids in procuring subscriptions, and sets in motion the machinery which leads to the formation itself. Every person, acting by whatever name in the forming and estab-

lishing of a company at any period prior to the company, is considered in law as occupying a fiduciary relation towards the corporation. He is an agent of the corporation, and is subject to the disabilities of such. He is guilty of a breach of trust if he sells property to the corporation, purchased after he began promoting, without informing the company that the property belongs to him; or he may commit a breach of trust by accepting a bonus or commission from a person who sells property to the corporation. The law is rigid in its protection of the corporation and stockholders. Cook, Stocks, sec. 657. When a stockholder has been defrauded by such trustees, and seeks redress against the fraud, it is no answer to say that by proper inquiry he might have learned the truth, or by more vigilance he might have discovered the deception; and, when the representations are by a prospectus, he is not obliged to investigate for himself, and investigate the truth of representations, to protect himself against the charge of negligence. But the principle of law, that fraud vitiates all contracts, applies to a contract of subscription, and such contract is voidable for fraud, at the option or election of the person defrauded. There are several remedies which are open to a subscriber induced to subscribe by fraud. One is— as pursued in this case—by bill in equity to restrain suits at law upon his undertakings, and to set aside the subscription contract, and also, if he wishes, to recover back payments already made on the subscriptions. And it is said by Mr. Cook, in his valuable book on Stocks and Stockholders and Corporation Law, that this is the most fair, safe, and complete remedy that the subscriber has. It is a decisive notice to the corporation and all third parties not to rely on the subscription in question. It enables the subscriber to set aside the contract, to enjoin action at law for calls, and to recover back payments made before the discovery of the fraud. It is the customary, and, it seems, favorite, remedy in England, and

has been clearly upheld in this country. The complainant in such a bill in equity, to set aside a subscription obtained by fraud, cannot sue in behalf of himself and such others as may choose to come in ; but several subscribers defrauded in the same way may join in a bill as co-complainants. The corporation is to be a defendant ; and, if merely a cancellation of a subscription and an injunction against suits at law are sought, the corporation, it seems, may be the sole defendant. A court of equity in these actions will give complete relief by decreeing that the directors guilty of the fraud shall refund to the subscriber payments made by him before discovery of the fraud. This relief dispenses with an action at law for damages for deceit, and, when sought for in the bill in equity, the guilty directors must be made parties ; and the bill is not multifarious by reason of its blending prayers for these various kinds of relief. Cook, Stocks, §§ 150, 156 ; citing *Reese River, &c., Co.* v. *Smith*, L. R. 4 H. L. 64 ; *Hallows* v. *Fernie*, L. R. 3 Ch. App. 467 ; *Vreeland* v. *Stone Co.*, 29 N. J. Eq. 188.

In the case of *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 151, Chancellor Kent said, upon this question of the misjoinder of plaintiffs : " There is no sound reason for requiring the judgment creditors to separate in their suits, when they have one common object in view, which, in fact, governs the whole case. There is no particular matter in litigation peculiar to each plaintiff.; and, if they be required to sue separately, it may be pertinently asked, *cui bono ?* Their rights are already established, and the subject in dispute may be said to be joint, as between the plaintiffs on the one hand and the defendants on the other, charged with a combination to delay, hinder, and defraud their creditors. If each judgment creditor was to be obliged to file his separate bill, it would be bringing the same question of fraud into repeated discussion, which would exhaust the fund, and be productive of all the mischief and

oppression attending a multiplicity of suits. It appears
to me, therefore, that the judgment creditors, in cases
of fraud in the original debtor, have a right to unite
in one bill to detect and suppress that fraud [citing
the chief baron in *Ward* v. *Duke of Northumberland*,
2 Anstr. 469, as agreeing that unconnected parties might be
joined in one suit, where there was a common interest among
them all, centering in the point in issue in the cause]. And,
if I am not mistaken, it is the case in the present suit as
respects the plaintiffs. The *gravamen* of the bill is fraud,
equally injurious to all the plaintiffs, and their interests all
center on that point." See the opinion and the cases cited.
Saying further : " There was a series of acts on the part of the
persons concerned in this Genessee Company, all produced by
the same fraudulent intent, and terminating in the deception
and injury of the plaintiffs. The defendants performed
different parts in the same drama, but it was still one piece—
one entire performance—marked by different scenes"; and
" that the subject-matter of the bill and of the relief, and the
only matter in litigation, is the fraud charged," &c. The
learned chancellor further observes that the rules of pleading
in chancery are not so precise and strict as at law, and are
more flexible in their modification, and can more readily be
made to suit the equity of the case and the policy of the
court; and that the case, also, of creditors suing on behalf of
themselves and all others, is another instance of the relaxation
of the severity of a general rule of pleading.

Mr. Justice Story, in his work on Equity Pleading, (section
279,) speaking of the objection to a bill for multifariousness
upon the misjoinder of plaintiffs, says that the principle
applies to an improper joinder of plaintiffs, who claim no com-
mon interests, but assert distinct and several claims against
one and the same defendant. If several distinct holders of
scrip or shares in a loan should sue on behalf of themselves

and all others, to have their subscriptions refunded, the bill would be multifarious, for their interests and demands are distinct and several. But the objection of misjoinder does not apply where all the parties plaintiff have an interest in the suit, although it is not a co-extensive interest.

Another exception to the general doctrine respecting multifariousness and misjoinder, which has already been alluded to, is when the parties (either the plaintiffs or defendants) have one common interest touching the matter of the bill, although they claim under distinct titles and have independent interests. Mr. Pomeroy, in his work on Equity Jurisprudence, has examined this subject with great ability, and maintains the jurisdiction on behalf of persons having a common interest in the subject of the suit, and in cases where there is a community of interest in the question at issue, and perhaps in the kind of relief sought, only. Pom. Eq. Jur., § 269. If the claims are distinct, and grow out of different transactions, it has been denied that the plaintiffs may unite—join as plaintiffs—against a common defendant because their claims are similar, as we have seen, as in *Jones* v. *Garcia del Rio, supra,* where each had a demand at law, and each a several demand in equity. Where the fraudulent acts complained of are different and unconnected, the joinder is not allowed, because they are distinct and separate, although similar, as where agents procure subscriptions by fraudulent representations at different times and under varying circumstances, although similar in their general scope, because the defense is different and the acts are different and distinct, and the proofs are necessarily different, each dependent upon its own circumstances. But in a case like the one made by this bill, where the parties allege in the bill that the fraudulent acts are exactly the same, and perpetrated by the same means, and the injury identical as to all, except only in the amount of the injury—as where the same false statements are dis-

tributed to all, and the same false and deceitful prospectus is operated upon all alike, and all have been defrauded by the same means, and the relief sought is the·same, and the subject-matter identically the same—there is a community of interest and right, and such persons may unite as co-plaintiffs against the common wrong-doer. If this were not so, it is difficult to see how relief could be had at all. In so many holdings many are necessarily small, and the whole interest destroyed inevitably in an effort to redress an admitted wrong.

The bill in this case is most skillfully drawn, evidently in the light of the authorities, and is in accordance with principles well established in the law, and not defective, nor liable to demurrer. The case stated therein is one calling loudly for relief in equity, and the plaintiffs are properly joined. Whether the proofs can be adduced to sustain its charges is a question we do not now propose to decide; but the decree of the circuit court, sustaining the demurrer, is, we think, erroneous, and for that reason the same will be reversed, and the cause remanded to the said circuit court, there to be considered upon the merits and for final decree therein, as that may appear right upon the hearing.

DECREE REVERSED.