## Wytheville.

### ·W. S. McCLANAHAN v. IVANHOE LAND & IMP. CO.

### J. L. TREDWAY v. SAME.

### J. B. WAUGH v. SAME.

### SNEAD'S ADM'R v. SAME.

### MRS. S. U. SNEAD v. SAME.

### SNEAD & SNEAD v. SAME.

#### JUNE 23, 1898.

1. STOCK SUBSCRIPTIONS—*Fraud in Procurement—Rescission—Payment of Premium to a Third Party—Case in Judgment.*—A person who has been induced to become a subscriber to the stock of a company through the fraud of the company and its misrepresentation of material facts may, on discovery of the fraud and misrepresentation, have his contract of subscription rescinded, and recover back ·the purchase money paid, with interest thereon, although he may have paid a third party a premium or bonus to get the stock. In the case in judgment the contract of subscription was made by the appellant with the company. It was obtained by misrepresentations of material facts made directly to him. · The certificates were issued directly to him. The cash payment and the subsequent assessments were paid by him, and, though he may have paid a third party a premium or bonus to get the stock, there is not an intimation, either in the certificate or the record, that the stock had ever been subscribed to by any other person, and transferred by such other person on the books of the company to the appellant. The just and fair inference, therefore, is that such third person to whom he · may have paid a premium or bonus stood to the company in the relation of agent, and the contract will be rescinded, and a decree pro-· nounced against the company for the purchase price paid, with interest from the date of payment.

Appeals from several decrees pronounced by the Circuit Court of Wythe county on the 18th day of September, 1896, in sundry chancery suits wherein the appellants respectively were severally complainants, and the appellee was the defendant.

*Reversed.*

The controversy in each of these cases was between the complainants respectively and the Ivanhoe Land and Improvement Company. There was no allegation that the company was insolvent, or that the rights of any of its creditors were in any wise involved.

The opinion states the case.

*C. B. Thomas* and *H. M. Heuser*, for the appellants.

*Walker & Caldwell*, for the appellee.

CARDWELL, J., delivered the opinion of the court.

These causes were heard together in the court below with their companion case of "*Grosh* v. *Ivanhoe Land and Improvement Company*" (decided by this court, and reported in 95 Va. 161), and were heard together in this court.

It is conceded by counsel for appellee that the three cases last named above are controlled by the decision of this court in the *Grosh case, supra,* and we are of opinion that neither the case of J. L. Tredway nor that of J. B. Waugh can be distinguished from that case in any material feature. Therefore, for the reasons there stated, which need not be repeated here, a decree will be made in each of the five cases last named similar to the one made in the *Grosh case.*

McClanahan's bill alleges that by reason of the assurances,

promises, and representations made to him by the authorized agents and officers of the defendant company, by word of mouth as well as by the prospectus, handbills, circulars, maps, posters, and newspaper advertisements, issued and published by the company, or by its authority and binding upon the company, which assurances and representations were material and false, he, complainant, was induced to purchase three of the company's town lots at Ivanhoe on July 16, 1890, for the aggregate price of $1,100, of which he paid $366.68 in cash, and for the residue executed his two bonds for $366.66 each, payable in one and two years from date, with interest, securing the bonds by deed of trust to M. M. Caldwell, trustee, on the lots; and also subscribed for and purchased 110 shares of the capital stock of the company (which were to be $10 each when paid up), paying therefor the required assessment of twenty *per cent.,* amounting to $220, and on August 26, 1891, made a second payment of ten *per cent.* thereon, amounting to $110, making the amount paid on stock $330 and a total on the stock and lots $696.68, less a credit of $40 for error in size of lots; all of which was paid upon the faith of the assurances, promises, and representations of the company fully set out in his bill. The prayer of the bill is that the company, and the trustee in the deed of trust securing the deferred payments for the lots bought by complainant, be enjoined and restrained from collecting in any way the bonds secured by the deed of trust, or the unpaid subscriptions to the stock, or foreclosing the deed of trust; that the contract for the sale of the lots, and the subscriptions to the stock, be rescinded and annulled, and that the company be required to refund to the complainant the $656.68 paid in part by him for the lots and stock, with interest thereon from the dates of its payment.

To this bill the company filed its demurrer and answer, but the demurrer was overruled, and the bill dismissed by the court below.

The demurrer does not seem to be relied on here, but if it

was we are of opinion that it was properly overruled. *Bosher* v. *R. & H. L. Co.*, 89 Va. 455; and *Rader* v. *Bristol L. Co.*, 94 Va. 766.

As to the lot feature, there is nothing in the evidence differentiating this case from the *Grosh case*, and in this respect it is also controlled by the decision in that case. Therefore, the only remaining question requiring consideration is whether or not the complainant, McClanahan, makes a case entitling him to the relief he asks as to the 110 shares of the capital stock of the company, subscribed to or purchased by him.

The allegation of his bill is, as we have seen, that he subscribed to this stock, paid the required assessment of twenty *per cent.* thereon, and on August 26, 1891, made a second payment of ten *per cent.* by reason of the fraud and false representations of the company, set out in his bill, which representations were material, and alone induced him to invest in the company's lots and stock. The answer of the defendant company makes a general denial of the allegations of the bill, and is silent as to how complainant acquired his stock, but complainant, in his deposition in the cause, states that he purchased the stock from parties in Roanoke, paying a premium therefor, and refers to the certificates of the stock filed, to show the dates at which it was issued to him and the payment of the additional ten *per cent.* thereon; one of the certificates for 10 shares having been issued June 20, 1890; one for 50 shares August 26, 1890; the other for 50 shares August 27, 1890, as set out in the bill, and each of them setting forth that M. S. McClanahan (complainant) has become a subscriber to the number of shares of the capital stock of the company named in the certificate, has paid the assessment of twenty *per cent.* on the same, and shows by an endorsement thereon that he paid the additional assessment of ten *per cent.* August 26, 1891.

It is the contention of the appellees here that McClanahan purchased his stock from third parties, and therefore he has no cause of action against the company arising out of these transactions.

On the 4th of July, 1890, McClanahan, having seen, as he says, an advertisement of the company in the *Roanoke Herald,* wrote to the secretary and treasurer of the company asking him to send maps, descriptive pamphlets, &c., of Ivanhoe, as advertised in the *Herald,* and also to advise him (McClanahan) if any "Ivanhoe" stock could be had, and at what price. July 5, 1890, the secretary and treasurer of the company wrote McClanahan that maps, pamphlets, &c., of "Ivanhoe" would be forwarded him at once, and commended highly the lots of the company at "Ivanhoe," concluding his letter with the statement that the company had natural and industrial advantages, energetic and influential men back of it, and enough capital to place the success of "Ivanhoe" beyond all question. The maps, pamphlets, &c., then sent to and received by McClanahan are copies of those considered by this court in *Grosh's case,* and the proof is that McClanahan was induced by the representations contained in these maps, pamphlets, &c., and statements made to him by the officers of the company, to invest in its stocks.

It is not denied that the company received from McClanahan the twenty *per cent.* assessment upon this stock when issued, and the additional ten *per cent.* thereon (including the 10 shares issued to him June 20, 1890) paid August 26, 1891, whereby the company received the benefits *pro tanto* of these contracts of subscription to its capital stock, procured by material representations that were false. Though McClanahan may have paid third parties a premium or bonus to get this stock, the contracts of subscription were made by him with the company, the certificates issued directly to him, and not an intimation is made, either in the certificates or the record, that these stocks had ever been subscribed to by any other person or persons and transferred from such person or persons on the books of the company to McClanahan. Therefore it is a fair and just inference that these third parties to whom he may have paid a premium or bonus to get the stock, stood to the company in the relation of agents, and the company will not

in this or any other manner be permitted to reap benefits from contracts of subscription to its stock, into which the subscriber has been deceived by fraud or misrepresentations of the company, for there is no law better settled than that no man is bound by a bargain into which he has been deceived by fraud or misrepresentation.

The case of *Lewis* v. *Berryville Land Co.*, 90 Va. 693, is wholly unlike this case. In that case the action was at law to recover of Lewis an assessment due on shares of stock issued to McCormick and assigned to Lewis. Lewis filed special pleas raising a question of a breach of warranty to McCormick, the original subscriber. This court in its opinion, said: " The question raised is, can the defendant set up the supposed injuries of a third person ? " and held that he could not, or in other words, that Lewis could not recover of the company for an injury that was personal to McCormick, and that the assignment of the stocks to Lewis did not carry with it the right to set up as a defence against the unpaid subscription due thereon, a fraud alleged to have been perpetrated upon McCormick in the original contract of subscription.

The relief sought by the appellant in the case at bar is from a contract made by him with the company, which he was induced to enter into by misrepresentations of the company made directly to him, and not to another.

The defence of *laches* is not relied on, and there is nothing to show that appellant in any way ratified the contracts of which he complains after he was aware of the fraud or misrepresentations inducing him to enter into them. It was in May, 1894, that this appellant first learned the facts as to the company's affairs, and that his stock had been sold and bought in by the company as early as November, 1892, letters from officers of the company to him during this period leading him to believe that no sale of his stock had been made; and he brought this suit to the next term of the Circuit Court of Wythe county, in July, 1894.

We are of opinion that appellant is entitled to have these contracts of subscription to the capital stock of the company set aside and annulled, and as an incident to this relief, to have back from the company the money paid thereon. This applies, however, only to the assessments paid on the 100 shares of stock issued to appellant on August 26 and 27, 1890. The evidence is not clear that he was induced to subscribe to or purchase the 10 shares issued to him June 20, 1890, by the fraud or misrepresentations of the company, and therefore he would not be entitled to a rescission of that contract, or to recover back the assessments paid on them.

The decree appealed from will be reversed, and a decree made by this court rescinding the contract of sale of the three lots in question to appellant (McClanahan); cancelling his unpaid purchase money bonds therefor, and the deed of trust securing them, and directing the appellant to reconvey the lots to the Ivanhoe Land and Improvement Co. Also cancelling the certificates of stock issued to appellant August 26 and 27, 1890; enjoining and restraining the Ivanhoe Land and Improvement Co., its agents or attorneys, from collecting, or attempting to collect, of appellant any further assessment thereon; and decreeing that appellant recover of the Ivanhoe Land and Improvement Co. the sum of $626.68, with interest on $326.68 from July 16, 1890, till paid; on $200 from August 27, 1890, till paid; and on $100 from August 26, 1891, till paid, and the costs of this suit.

*Reversed.*