## TULSA TRIBUNE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 550.

Circuit Court of Appeals, Tenth Circuit.

May 9, 1932.

LEWIS, Circuit Judge, dissenting.

Charles H. Garnett, of Oklahoma City, Okl., for petitioner.

J. P. Jackson, Sp. Asst. to Atty. Gen., G. A. Youngquist, Asst. Atty. Gen., A. H. Conner, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Arthur Carnduff, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before LEWIS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

This is a proceeding to review a decision of the Board of Tax Appeals sustaining the Commissioner in assessing a deficiency of $4,554.97 in income and excess profit taxes against the petitioner for the calendar year 1920.

The controversy arises in connection with the Revenue Act of 1918, § 326 (40 Stat. 1092), relating to invested capital. Summarized for the purposes of considering the question here involved, section 326 specifies that the term "invested capital" for any year as used in the act means: (1) actual cash bona fide paid in for stock or shares; (2) actual cash value of tangible property; and (3) intangible property paid in for stock or shares not exceeding the aggregate of 25 per cent. of the par value of the total shares outstanding.

The situation was developed by the controversy at its inception by the petitioner claiming the full par value of its capital stock of $300,000 as invested capital, which the Commissioner disallowed and applied the principle laid down in clause 3 above set out to that portion of the capital allocated to intangible property, thereby reducing the capital stock invested by the sum of $85,000. This is the amount to which the protested tax is directed, in the manner which will be more specifically indicated by the facts about to be discussed.

As the findings of fact of the Board set forth in the record seem to be supported by the evidence, they may be accepted for the basis of the review here sought.

A running sketch of the pertinent facts established is substantially as follows: One Jones and his associates were conducting a newspaper in Wisconsin for a period of eight years prior to 1919, at which time it was agreed that they should seek a larger field. It was left to the judgment of Jones to make the necessary investigation, after which, if a suitable property and location were found, Jones and his associates were to organize a corporation with its stock to be distributed among them in accordance with an agreed ratio. The investigation of Jones led him to the conclusion that the purchase of the Tulsa Democrat, published at Tulsa, Okl., would suit the requirements of himself and associates, which fact he communicated to them. Thereupon Jones entered into negotiations with the owners of the Tulsa paper resulting in a contract for its purchase for the sum of $300,000 cash. This transaction took place in the latter part of November, 1919, and was consummated by the payment of such sum to the owner of the Tulsa paper, which was made up of $100,000 supplied by Jones and $200,000 which Jones borrowed upon his own personal note from a Tulsa bank. Steps were thereupon taken to organize the proposed and previously agreed upon corporation, which, on account of some unavoidable delays, was not perfected until January 19, 1920, when the Tulsa Tribune Company, the petitioner, came into being. The entire capital stock of $300,000 of this corporation was then distributed among Jones and his associates in substantial accordance with the previously agreed ratio.

Pending the time when the property was transferred and the corporation became organized, Jones conducted the business of the newspaper at a small profit which his associates allowed him for promoting the enterprise. On the day that the organization of the corporation became perfected, the assets which had been acquired by Jones from the owners of the Democrat in consideration of the payment of $300,000 cash were transferred to the newly organized company. The auditor of the company then set up on the books the assets of the new company on the basis of $140,000 to plant and equipment and $160,000 to circulation.

It is the contention of the petitioner that, taking the facts concerning the above transaction as a whole, it was the duty of the Commissioner and the Board to have found upon the facts that the $300,000 which was raised among Jones and his associates was in fact paid in purchase of the entire capital stock of the petitioner, bringing it within clause 1 of the above-analyzed section 326, in that the whole matter as embraced within the record should be treated as one transaction; while it is the contention of the respondent that the purchase of the newspaper plant by Jones and his associates prior to the incorporation of the petitioner was one transaction and the transfer of it afterwards by them to the petitioner was a second and distinct transaction in which it appearing that the property representing the purchase being transferred to the petitioner in consideration of the issuance of its capital stock, coupled with the fact that the petitioner set up on its books and allocated its capital investment on the basis of $140,000 to plant and equipment and $160,000 to circulation, clause 3 of section 326 as above indicated must be brought into force by attributing an amount not greater than 25 per cent. of the par value of the to-

tal stock to that portion allocated to circulation, thereby reducing the $160,000 item to the sum of $75,000. It is not in dispute between the parties that, if circulation is to be regarded as a factor in the equation, it must be treated as intangible property.

We believe that the Commissioner and the Board have drawn erroneous inferences from the facts under the law which should govern the rights of the parties in the premises. Under this statement of facts Jones should be regarded in the light of a promoter for a corporation to be formed and that the rights, benefits, and liabilities in regard to such a corporation should be fixed, considered, and determined upon such basis. The authorities are numerous upon this question. Quoting from 14 C. J. quite liberally in announcing the general principles, we find as follows:

At page 251: "A promoter of a corporation is one who, alone or with others, takes it upon himself to organize a corporation."

At page 257: "By the great weight of authority a contract made by the promoters of a corporation before it was formed becomes the contract of the corporation, so that it is both entitled to the benefit thereof and liable thereon, if it expressly or impliedly ratifies and adopts the same as its own or, in most jurisdictions, ratifies it, after it comes into existence, provided it is a contract which the corporation has the power under its charter to make."

At page 259: "After a corporation comes into existence it may make a contract entered into by its promoter its own either by express agreement or by ratification or adoption; and this ratification or adoption may be by express corporate action or by any of the other modes, including corporate acts, by which corporations may ratify or adopt the unauthorized or officious acts of others made in their behalf, as where the corporation voluntarily accepts the benefits accruing to it from the engagement of its promoters, after full knowledge, and having full liberty to decline the same, in which case it is to be regarded as adopting the contract cum onere, taking the burdens thereof with the benefits."

At page 266: "Property may be conveyed to individuals in trust to hold the same until the organization of a corporation and then to transfer the property to it, and the corporation, when formed, if conditions precedent are fulfilled, may compel a conveyance to it by the trustee. And where a purchase of land is made by several persons representing a voluntary association for the common benefit of all the persons composing the association, and the purchase money is paid and possession of the land given, equity raises a promise by the vendor to make a title, either to the persons making the payment, or to the corporation if one be created. In such case the vendor, as to the title, becomes a trustee for the purchasers, and as they are the mere agents of the voluntary association, the moment the association is incorporated it has a right in equity to a conveyance from the vendor. It has also been held that the subscribers for the stock of a corporation constitute a voluntary association prior to the issuance of its charter, and that a deed to the corporation vests title in them individually but in trust for the corporation, so that they may be compelled to convey the land to it. So, where options on property are procured for a corporation by a promoter of it, prior to its creation, the corporation, on its organization, has, by virtue of its right to ratify or adopt his contract, an equitable interest in the property, so that if the promoter takes the deeds he takes title for the use of the corporation. And where the promoter of a corporation takes a lease in his own name for the benefit of the corporation, and after its organization it ratifies his act, the lease becomes the property of the corporation. In a proper case a promoter who has purchased property for the proposed corporation may be held as a trustee for the corporation in a suit by a creditor of the corporation to subject the land to the payment of his debt."

These principles are supported by the following authorities: Dickerman v. Northern Trust Co., 176 U. S. 181, 20 S. Ct. 311, 44 L. Ed. 423; Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050; Gardiner v. Equitable Office Bldg. Corp. (C. C. A. 2) 273 F. 441, 17 A. L. R. 431; Irwin Glass Co. v. Buchanan, 289 F. 348 (C. C. A. 3); Slattery v. Harris, 1 F.(2d) 973 (C. C. A. 8); New England Oil Refining Co. v. Wiltsee, 3 F.(2d) 424 (C. C. A. 1); In re Super Trading Co., 22 F.(2d) 480 (C. C. A. 2); Villar & Co. v. Conde, 30 F.(2d) 588 (C. C. A. 1); Boatright v. Steinite Radio Corp., 46 F.(2d) 385 (C. C. A. 10).

Upon this theory, whatever transaction was carried out by Jones must be considered as being for the use and benefit and in trust for the corporation to be formed, in the event that the corporation when formed should elect to accept and ratify it, which was done in this case. Jones, under the law,

could have been forced to transfer the property to the newly organized corporation, and therefore the transaction became the same in effect as though the corporation with the $300,000 in its treasury as received from the sale of its stock had paid that amount for the property which it acquired, thereby bringing the transaction within the first clause of section 326, of having had actual cash paid in for its entire capital stock.

Shorn of legal technicality, the transaction was this: In accordance with a prearranged plan for the organization of a corporation at a capitalization sufficient to meet the needs and whose stock was to be prorated in its distribution, Jones acting for himself and his associates, went out and purchased for such proposed corporation property for which he paid $300,000 in cash. The corporation was then organized pursuant to the plan with its capital structure commensurate with the demands, to wit, $300,000. Upon the completion of such organization all the corporation had upon which to realize cash was its capital stock. This it transferred to those who by previous arrangement had advanced for its benefit cash in the sum of $300,000 for the purchase of the property and thereupon received by transfer such property.

As it seems to us, the attempt to break this transaction up into two elements by saying that Jones bought the property and then transferred it to the corporation in exchange for its capital stock is not only unfair, but untrue. If, admitting the prearranged plan for the corporation which the facts show, Jones in acting for himself and associates had taken an option on the property to be purchased at $300,000, the corporation had then been organized for this amount, its capital stock transferred to Jones et al. in exchange for $300,000 cash which Jones possessed or borrowed and with this money the option of purchase had been exercised in behalf of the corporation, certainly it could not then be said that there had not been "actual cash bona fide paid in for its stock or shares" in the sum of $300,000; and yet there is no difference in substance between the actual and supposititious transaction, because in either case the corporation would have realized $300,000 cash for its capital stock, which is the only point for determination in this inquiry.

There seems to be no substantial justification under all the circumstances to arbitrarily divide the matter into two transactions as was done by the Board, which necessarily amounted to a finding from the evidence that Jones bought the paper for himself and then sold it to the corporation in consideration of the issuance of its capital stock, the net result of which is to penalize the petitioner in the matter of taxes assessed against it.

It is an oft-repeated rule which should carry weight in the question here to be determined, that in applying the provisions of income tax laws, matters of form should be disregarded for those of substance. United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180, and the cases there cited.

Likewise it is well established that, in case of doubt in the interpretation of statutes levying taxes, they should be most strongly construed against the government and in favor of the citizen. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211, and the cases there cited. Some suggestion is made in the brief of the respondent that the $200,000 borrowed by Jones on his own account, which obligation was some time later assumed by the corporation, should not be considered as invested capital. We do not regard this circumstance as being material, but, in any event, not being the basis of the assessed deficiency and being raised for the first time on this appeal, it ought not to be considered.

The order of the Board of Tax Appeals is reversed.

LEWIS, Circuit Judge, dissenting.

The contentions of petitioner require a consideration of transactions through which petitioner eventually acquired the Tulsa Democrat, that is, all the physical property used or connected with its publication and its subscription lists or rights to its circulation. The paper belonged to the Tulsa Democrat Company, a corporation. Mr. Richard L. Jones acted for himself and four other persons associated with him in making the purchase. For reasons stated by him he was not willing to purchase all of the shares of the old company, but purchased all of its property from Mr. Charles Page and paid him the purchase price of $300,000.00 on November 22, 1919, and possession of the property of the old company was then delivered to the purchasers. After the purchase from Mr. Page had been made and in accordance with a prior agreement before the purchase, the purchasers organized a new corporation, appellant here, to which they transferred the property, but before doing so they operated the plant purchased as individuals until January 19, 1920, when the property was transferred to the new

company, an Oklahoma corporation with a capital stock of $300,000.00. All of the capital stock of petitioner was issued to Mr. Jones and his associates in consideration of a transfer of the property purchased by them. They took from the new company certificates of shares in the proportions that they had agreed upon before they purchased the property of the Tulsa Democrat Company. The auditor of petitioner entered on its books its assets in two items, $140,000.00 as the value of the physical plant, and $160,000.00 as the value of the circulation rights of the old company.

On these facts found by the Board, petitioner contended that the transaction was in form and also in fact the payment of $300,000.00 in cash for petitioner's stock, and if not such in form it was clearly so in substance. It is conceded that if the facts sustain these contentions, the $300,000.00 constitute petitioner's invested capital under section 326 of the Revenue Act of 1918 (40 Stat. 1057, 1092), and would be the basis or starting point in the computation of the tax. To sustain this contention petitioner's counsel argues that Mr. Jones and his associates in purchasing the property as individuals stood in the position of promoters of a corporation, that it should be regarded as though they had actually paid the $300,-000.00 to the corporation with which it purchased all of the property of the old company. I am unable to see the application of the principle relied on to the facts of this case. The subject of promoters is discussed at length in chapter 5, vol. I, Fletcher, Cyclopedia of Corporations. It is there said:

"The term 'promoter' does not carry any implication, however, that the person which it describes becomes related to the corporation as an officer or even a stockholder,"
—that one cannot be charged with the duties and liabilities of a promoter merely because he is a subscriber for corporate stock and one of the original incorporators, though he is none the less such because he is also a subscriber; that the term also involves the idea of some duty toward the corporation imposed or arising from the position which the promoter assumes. Among the cases cited is Bigelow v. Old Dominion Copper M. & S. Co., 74 N. J. Eq. 457, 501, 71 A. 153, 171, wherein it is said:

"A promoter is one who seeks opportunities for making advantageous purchases and profitable investments in industrial or other enterprises, who interests men of means in such a project when found, organizes them into a corporation for the purpose of 'taking over' the project, and attends upon the newly formed company until it is fully launched in business."

In Dickerman v. Northern Trust Co., 176 U. S. 181, on pages 203, 204, 20 S. Ct. 311, 319, 44 L. Ed. 423, this is found:

"A promoter is one who 'brings together the persons who become interested in the enterprise, aids in procuring subscriptions, and sets in motion the machinery which leads to the formation of the corporation itself.' Cook, Stock & Stockholders, § 651. Or, as defined by the English statute of 7&8 Vict. chap. 110, § 3, 'every person acting, by whatever name, in the forming and establishing of a company at any period prior to the company' becoming fully incorporated. See also, Lloyd, Corporate Liability for Acts of Promoters, 17. He is treated as standing in a confidential relation to the proposed company, and is bound to the exercise of the utmost good faith. Lloyd, Corporate Liability, 18; Densmore Oil Co. v. Densmore, 64 Pa. 43; Bosher v. Richmond & H. Land Co., 89 Va. 455, 16 S. E. 360 [37 Am. St. Rep. 879]. The promoter is the agent of the corporation and subject to the disabilities of an ordinary agent. His acts are scrutinized carefully, and he is precluded from taking a secret advantage of the other stockholders. Cook, Stock & Stockholders, § 651. 'Accordingly, it has been held that, if persons start a company, and induce others to subscribe for shares, for the purpose of selling property to the company when organized, they must faithfully disclose all facts relating to the property which would influence those who form the company in deciding upon the judiciousness of the purchase. If the promoters are guilty of any misrepresentation of facts, or suppression of the truth in relation to the character and value of the property, or their personal interest in the proposed sale, the company will be entitled to set aside the transaction or recover compensation for any loss which it has suffered.' Morawetz, Priv. Corp. §§ 291, 294, 546; New Sombrero Phosphate Co. v. Erlanger, 5 Ch. Div. 73; Bagnall v. Carlton, 6 Ch. Div. 371; Emma Silver Mining Co. v. Grant, 11 Ch. Div. 918.

" 'In those cases where the scheme of organization gives the promoters the power of selecting the directors who are to represent the company in the proposed purchase, they are bound to select competent and trustworthy persons who will act honestly in the interest of the stockholders. A purchase made

942

from the promoters under these circumstances will not bind the company unless it was a fair and honest bargain.' "

See, also, 14 C. J. 251, note 32. Mr. Jones and his four associates were the organizers and owners of petitioner. He acted for himself and as agent for his associates in making the purchase, and later they conveyed the property purchased to the new company. That was its total capital assets. It never received or was entitled to receive the $300,000.00 or any part of it. One who for a consideration plans the organization of a corporation, the conveyance of property to it, and subscriptions to its shares of proposed capital stock, and carries out the plan, is a promoter. But where expectant share holders organize a corporation themselves, and each conveys to it property of the value of the shares he takes out, I cannot see a promoter in the case. That was what was done here. The cases cited in the majority opinion deal with the rights and liabilities of a promoter. They are beside the mark. The transactions were simple.

The Commissioner rejected petitioner's contention above considered, and in order to ascertain the taxable base proceeded under section 326 of said statute and determined that the value of the tangible property for purpose of taxation should not exceed twenty-five per cent. of the par value of the total stock of the corporation. This added to the $140,000.00 for tangibles brought the base to $215,000.00, thus leaving $85,000.00 constituting the deficiency here involved. The Board of Tax Appeals approved the method adopted by the Commissioner. In this respect I think there was no error and that the action of the Board should be affirmed.