ST. THOMAS JEWELRY, INC., Petitioner

v.

COMMISSIONER OF FINANCE, Respondent

No. 108-1965

District Court of the Virgin Islands

Div. of St. Thomas and St. John

July 7, 1966

As Amended July 18, 1966

*See, also, 255 F.Supp. 461*

401

BIRCH, MADURO and DEJONGH, St. Thomas, Virgin Islands, *for petitioner*

PETER O'DEA, Attorney General, St. Thomas, Virgin Islands, *for respondent*

GORDON, *District Judge*

### MEMORANDUM OPINION

The petitioner petitions for a redetermination of the deficiency set forth by the respondent in its motion dated January 14, 1965. The respondent on March 14, 1966, has moved for a summary judgment. The petitioner appeared by Attorneys Birch, Maduro & DeJongh; the respondent by the Attorney General, Peter O'Dea. The motion was taken under advisement on March 14, 1966; both parties having waived oral argument. The respondent on March 14, 1966, was reserved the right to file an answer if the motion is denied.

### I

The Court has reviewed the affidavits on file and finds that there is no genuine issue as to any material fact and therefore will decide this case pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### II

The issue involved is whether the acquisition of Werthal Jewelers, Inc., constituted a reorganization under Section 368(a)(1)(d) of the IRC of 1954 as provided in Section 381 relating the carry-over of a net operating loss to a successor corporation.

Respondent's main contention is that the petitioner (the new corporation) had by law only 100 shares of stock which it was authorized to issue. That it issued 300 shares and that only the first 100 shares are valid shares. Respondent asserts that since the holder of the first stock certificate received all of the valid shares, the other recipients are not stockholders and hence the stockholders of the new corporation do not have the same proportionate interest required under the IRC to qualify the transfer under the IRC sections previously set forth.

## III

■■ It is stated in 13 Am. Jur. § 180 that ". . . It is well-established principle that any issue of stock by a corporation in excess of the amount prescribed or limited by its charter is ultra vires, and the stock so issued is void, even in the hands of a bona fide purchaser for value. Such stock cannot legally exist, and a person acquiring it cannot by estoppel or otherwise become a stockholder. . . . An overissue of stock does not, however, avoid the original issue." In the case of Scovill v. Thayer 105 U.S. 143, 26 L.Ed. 968 the company made four issues of stock, the last two of which the Court found exceeded the authorized statutory limits. The Court said ". . . In this case the attempt to increase the stock of the company beyond the limit fixed by its charter was ultra vires. The stock itself was therefore, void. It conferred on the holders no rights, and subjected them to no liabilities." There is no question in this case but that the issue by the company of 300 shares when it had only 100 shares authorized was an ultra vires act. The respondent asserts that the stockholder receiving certificate No. 1 for 150 shares received the total shares of the petitioner (plus an additional 50 shares which petitioner was not authorized to issue) hence disqualifying petitioner from the right to claim the net operating loss

carry-over. That reasoning the Court cannot sustain for two reasons. First, the certificate for 150 shares (certificate No. 1 of petitioner) is a certificate issued ultra vires. The petitioner had no authority to issue such a certificate and it is void. Secondly, the issue in this case is distinguishable from the Scovill v. Thayer, supra, issue. In that case two entire issues were declared void. Nor is this a situation when a corporation has sold its stock over a period of time, reached its authority and then overissued. In that situation the overissue stock would be void and the previously issued stock valid.

In this case the stockholders of the original corporation contracted between themselves and confirmed it by a corporate resolution that each of them would surrender his interest in the old corporation for a proportionate interest in petitioner. The consideration for the new shares was the surrender of the shares of ownership of the old corporation. That part of the contract was executed. Each of the old shareholders acted to his detriment in surrendering his shares.

■ ■ The shares of petitioner were not to be bought over a period but were to come forth as one issue and was intended by the parties to complete the execution of the contract between the shareholders of Werthal Jewelers, Inc. (hereinafter referred to as the old corporation). The four shareholders of the old corporation had made an agreement to surrender their interest in the old corporation for a proportionate interest in petitioner. This was their agreement and their intention and was so set forth in the written resolution. In executing this agreement with written documentation (stocks) through mistake common to all, the documents (stocks) failed to express the real transaction (because of the limited authorization). Each of the four old corporation shareholders could have had the stocks corrected by reformation so as to truly represent the agree-

ment actually made according to the real purpose and intention of the parties. ". . . Reformation is appropriate, when an agreement has been made, or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such agreement or transaction to writing, either through the mistake common to both parties, or through the mistake of the plaintiff accompanied by the fraudulent knowledge and procurement of the defendant, the written instrument fails to express the real agreement or transaction. In such a case the instrument may be corrected so that it shall truly represent the agreement or transaction actually made or determined upon according to the real purpose and intention of the parties." Pomeroy's Equity Jurisprudence Vol. 3 § 870 and cases cited in the footnotes therein.

In this case this issue was intended to be made simultaneously to all four shareholders of the old corporation. Physically, of course, this could not be accomplished, the recipient of certificate No. 1 cannot gain an unjust enrichment merely because he was the first to physically receive a certificate as part of the total issue that day. The receipt of shares by the four stockholders of the old corporation must be considered as a single act—a single transaction—a single issue. That single issue was ultra vires and invalid.

## IV

If the holder of certificate No. 1 is not the sole owner of petitioner what then is the relationship of the stockholders of the old corporation and what is their interest if any of petitioner? The stock issue being an ultra vires act and invalid, each of the four shareholders of the old corporation received and have an equitable interest in the ownership of petitioner proportionate to their previous ownership interest in the old corporation (per their contract and their corporate resolution).

405

# V

■ ■ In the case of Starr v. Commissioner of Internal Revenue (1936) 82 F. 964 the Court dealt with three alleged transfers. Counsel for the Commissioner contended that there was in effect only one transfer. The taxpayers contended there were three transfers. The Court said ". . . It is perfectly clear that the three transfers were but steps in the carrying out of one general plan, all of the details of which were agreed upon before any of the transfers were made. The substance of that plan, stripped of irrelevent detail, was that, for each share of stock in the old corporation, the stockholder should have 2 1/2 shares of common stock in the new and $150 in cash, with the option on his part to take preference stock in the new corporation of $62.50 per share in lieu of one-third of the cash to which he would otherwise be entitled. The record shows that, by action of the stockholders in approving the plan and indicating their election under the option offered them, every detail of the three transfers was arranged before any of them took place. . . ." It went on to say ". . . Before any exchange was made, the old corporation was bound to exchange common stock of the new for its 'special' stock; the new corporation was bound to exchange its 'preference' stock for common stock of the old, in an amount which had been fixed by prior acceptance of the option; the old corporation was bound to redeem its common stock whether tendered by its stockholders or by the new corporation; and the common stock was called for redemption. *The various transactions contemplated by the plan were interdependent, and the carrying out of the plan as a whole was the real consideration for each of the transfers.*" (Italics supplied.) That Court further said ". . . Where transfers are made pursuant to such a plan of reorganization, they are ordinarily parts of one transaction and should be so treated in application of the well-settled principle that, in applying

income tax laws, the substance, and not the form, of the transaction shall control. First Seattle D. H. Nat. Bank v. Commissioner (C.C.A.9th) 77 F.2d 45; Prairie Oil & Gas Co. v. Motter (C.C.A.10th) 66 F.2d 309; Howard v. Commissioner (C.C.A.6th) 56 F.2d 781; American Security & Trust Co. v. Tait (D.C.) 5 F.Supp. 337. This is demanded also by the principle, equally well settled, that a single transaction may not be broken up into various elements to avoid a tax. Ahles Realty Corporation v. Commissioner (C.C.A.2d) 71 F.2d 150, 151; West Texas Refining & Development Co. v. Commissioner (C.C.A.10th) 68 F.2d 77, 79, 80; Prairie Oil & Gas Co. v. Motter, supra (C.C.A. 10th) 58 F.2d 937."

The transactions planned in this case were likewise interdependent and the carrying out of this plan for reorganization as a whole was the real consideration for the surrender of the stock in the old corporation. In viewing the substance and not the form this Court must arrive at the conclusion just stated.

An analagous situation occurred in the case of James Armour, Inc., 43 T.C. 295. In that case (as in the present case) both corporations were wholly owned by petitioners. Armour, Inc., transferred its equipment and fixtures to Excavating. The building lease was also transferred to Excavating. All personnel of Armour, Inc., immediately were placed on the payroll of Excavating. The same business activity which Armour carried on was carried on by Excavating. Armour, Inc., received in exchange an account receivable for the value of the property transferred. It was argued that because Armour, Inc., did not receive stock from Excavating, the provisions of Sec. 368(2)(1) (D) were not met. The Court in that case said: (Italics supplied.)

"All the above transactions were related, and it is readily apparent that *after* they were *effected* the *business* enterprise thereto-

fore *carried on by Armour*, Inc., namely, that portion of an overall construction business consisting of the ownership and maintainance of the equipment *was thereafter carried on by Excavating. The individual petitioners continued to own, through their ownership of Excavating, the same proprietary interest in the essential operating assets.* During the interim, 1948 to 1959, that the overall construction business was divided between Armour, Inc., and Excavating, each corporation accumulated substantial earnings— Armour accumulating approximately $638,000 and Excavating accumulating about $505,000. Upon the liquidation and dissolution of Armour, Inc., the petitioners received and retained cash and accounts receivable of about $1 million in addition to certain real estate of a value of approximately $109,000. *We think the substance of all these transactions was a statutory reorganization* of Armour, Inc., in connection with which the petitioners retained the cash and accounts receivable.

"Section 368(a)(1)(D) of the Code basically provides that the term 'reorganization' includes a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transferrer or one or more of its shareholders is in control of the corporation to which the assets are transferred. As is evident from what has been said above, *these conditions are literally met in the instant case.*

"The petitioners contend, however, that the various transactions here do not constitute a reorganization within the meaning of § 368(a)(1)(D), since there has not been met the statutory requirement that stock or securities of the corporation to which the assets are transferred be distributed in a transaction which qualifies under § 354, 355, or 356 of the Code. *They point out that there was no stock* of Excavating *actually transferred* to either Armour, Inc., or the individual petitioners. *However, the petitioners already owned all the stock of Excavating and it was not necessary that further stock be issued in order that they might retain their same proprietary interest in the assets received by Excavating.* The issuance of further stock would have been a meaningless gesture, and we cannot conclude that the statute requires such a vain act. We conclude, therefore, that *there was in substance an exchange of stock* of Armour, Inc., for stock of Excavating, which meets the requirements of §§ 354 and 356 of the Code (§ 355 has

408

no application here). See Commissioner v. Morgan, supra, where, in an analogous situation, the court held that the stock exchange requirements of § 112(b)(3) and (c) of the Internal Revenue Code of 1939 (corresponding to §§ 354(a)(1) and 356(a)(1)(B) of the 1954 Code) were met. The court there stated: 'If the transferor's assets had been transferred to a newly formed corporation in exchange for stock, there is no question that the boot would have been taxable as dividend income. That an existing corporation in which the taxpayer was the sole shareholder was used instead of a newly formed one cannot alter the true nature of the transaction. Here, the issuance of new stock would have been a meaningless gesture since the stock the taxpayer already held represented the total value of all the assets except for the boot'."

In substance the same situation has occurred in the present case. By resolution and plan all of the stock of Werthal was transferred to St. Thomas Jewelry, Inc., hence transferring in effect all of the assets of that company. In exchange the shareholders of Werthal received the "same proprietary interest in the assets received by" St. Thomas Jewelry, Inc.

## VI

The Court finds that the transaction here is a reorganization as described in § 368(a)(1)(D) and § 368(a)(1)(F) so as to permit it to qualify under §§ 381 and 382 of the Internal Revenue Code of 1954 for a net operating loss carry-over.

## VII

The respondent's motion for summary judgment is denied and the respondent is given twenty (20) days within which to file an answer.