WESCO SUPPLY COMPANY *v.* EL DORADO LIGHT & WATER COMPANY.

Opinion delivered March 24, 1913.

1. CORPORATIONS—ASSETS—CREDITORS—TRUST FUND.—The assets of an incorporated company are a trust fund for the payment of its debts, which may be followed into the hands of any person acquiring them with notice of the trust. (Page 428.)

2. CORPORATIONS—TRANSFER OF ASSETS—CREDITORS.—When one corporation of which A is the president, manager and owner of all the stock, sells all its assets to another corporation of which A is also president and manager and owner of four-fifths of its stock, and the new company issued its stock directly to A in payment for the transfer and A knew that the old company was indebted to the plaintiff, and knew of the insolvent condition of the old company, *held*, the new company is not an innocent purchaser of the assets of the old company and is bound to the payment of the creditors of the old company to the extent of the value of the assets received therefrom, whether it agreed to assume the obligations of the old company or not. (Page 430.)

3. CORPORATIONS—CREDITORS—TRANSFER OF ASSETS.—When a corporation with knowledge of the insolvent condition of another corporation, takes over its assets, it will be liable to the creditors

of the insolvent company in the amount of the consideration paid for its assets, which amount must be pro rated among the creditors, if the amount of the debts exceed the value of the assets received by the purchaser, and the burden of proof is upon the purchaser to show that the debts exceed the assets, and the pro rata share due plaintiff. (Page 430.)

Appeal from Union Chancery Court; *E. O. Mahoney,* Chancellor; reversed.

### STATEMENT BY THE COURT.

Appellants brought this suit against appellee to recover the amount of a judgment for the sum of $587.34 which it had obtained against the El Dorado Light & Power Company. The complaint alleges that on December 1, 1908, said light and power company was a corporation organized and doing business in the State and indebted to it in said sum for goods and merchandise sold and delivered to it. That it obtained judgment therefor in the Union Circuit Court on April 8, 1910, in the sum of $587.34, including interest from December 1, 1908; that on December 28, 1908, the defendant absorbed fraudulently all the assets of the El Dorado Light & Power Company and consolidated the same with itself, fraudulently taking over all its assets and appropriating the same to its own use and issuing its capital stock to the stockholders of the El Dorado Light & Power Company in payment for said assets, leaving no property belonging to said old company with which to pay plaintiff's claim or judgment and that it still has the property of the old company so taken over in its possession. It prayed judgment in the alternative for the amount of the judgment against the old company and interest, or that the appellee company be declared a trustee, holding the assets of the old company in trust for the benefit of the creditors and that same be subjected to the payment of its said judgment, a copy of which was exhibited with the complaint.

Appellee answered, denying the material allegations of the complaint, that it absorbed the assets of the El Dorado Light & Power Company, and alleged that it

only purchased a part of the assets of the said company, and paid therefor an adequate price without knowledge of appellant's claim against said company.

The testimony tends to show that the property of the El Dorado Light & Power Company was of the value of from $10,000 to $25,000, and that the new corporation, the El Dorado Light & Water Company, bought out the old company and its plant and other visible property passed into the possession of the new company.

John P. Holmes stated that he was the president of the old company, and owned practically all of its stock, in fact all but a few shares owned by his wife and one share held by W. D. Chew, all of which he acquired before the transfer; that he did not regard the company insolvent, although it could not pay its debts; that the new corporation was organized with an increased capital stock and it bought all the property of the old corporation, except about $1,500 in accounts, 65 per cent of which were good. The new company issued to him, as he was the owner of all the stock in the old, in payment for the property purchased of it, $20,000 of its stock, which was of the value of fifty cents on the dollar; that the old company owed him, individually, about $12,000, which he paid off, and that he applied all the stock issued to him and the proceeds realized from the accounts of the old company to the payment of its debts, all of which were paid, so far as he knew, except the debt to appellant. He was president when it became indebted for the supplies purchased by him from appellant company, for which the judgment sued on was afterwards obtained and continued so until the transfer of the assets to the new company, of which he was also president, a director, its general manager and owner of four-fifths of the stock thereof. He owned all of the stock of the old company at the time of the execution of the deed conveying the property to the new company and said it was the intention that the conveyance to the new company should transfer all of the property of the old, except the book accounts, already mentioned. That he knew the debt

due appellant company had not been paid when the transfer was made; that he, himself, negotiated the sale of the old company to the new company and acted also for the new company in making the purchase with another stockholder, Mr. Hudson. Said that the company was not exactly insolvent at the time of the transfer, but it was unable to liquidate its indebtedness and that the old company had never had any assets since the sale, except the accounts, which were collected by him. That he knew of no other debts due by it except the one to appellant company for which it obtained judgment and that it paid all other debts in full.

The deed from the old to the new company was introduced in evidence, and recites a consideration of the sum of $20,000 and contains a description of the property conveyed, including all rights enjoyed by it under a franchise, upon which it was operating for lighting the streets and private property and all contracts.

The court, after hearing the testimony, dismissed the complaint for want of equity, at appellant's costs, from which judgment it appealed.

*Warren & Smith,* for appellant.

The new corporation, appellee, is liable to the creditors of the old, to the extent of the assets received by it from the old corporation; and the assets of the old corporation may be followed in equity, as trust funds, into the hands of the new company taking with notice of the trust. 54 So. 807; 1 Beach on Private Corp. 558-9; *Id.* 560-61; 73 Atl. 254; 49 So. 934; Clark on Corp. 556; 10 Cyc. 303, par. (c) and (e); *Id.* 306, par. IV; *Id.* 309, par. VI; *Id.* 315; *Id.* 1302, par. (II).

There can be no preference by an insolvent corporation in this State. Kirby's Dig., § 949. Its assets must be *prorated.* 67 Ark. 11. See also 3 L. R. A. 435; 60 N. E. (N. Y.) 327 and cases cited; 26 L. R. A. (N. S.) 651. Under the circumstances of this case, notice to Holmes was notice to appellee. 99 N. E. 132.

*Marsh & Flenniken*, for appellee.

The transaction between the El Dorado Light & Power Company and appellee was a sale, and, there being no allegation nor proof that the latter agreed to pay or assume the debts of the former, it is not liable for the debt sued on.  97 Ark 106; 67 Ark. 94.

The proof is undisputed that Holmes used the stock in paying off the debts of the power company as far as it would go.  It will not be presumed that he received the stock as a *stockholder* for his *interest* in the assets of the power company when the proof shows that he immediately took the stock and applied it, or its proceeds, to the payment of the power company's debts.

The price paid was a fair consideration, and the power company got the benefit of the price in that it was applied to the debts of that company.  It, therefore, did not give or sell its assets to appellee to the *prejudice of its creditors.*

KIRBY, J., (after stating the facts).  If the formation of the new corporation and the taking over of the assets of the old upon the issuance of the $20,000 of the stock of the new corporation to John P. Holmes, the owner of all the stock in the old corporation, in payment therefor, be regarded a reorganization of the old corporation, the rights of creditors would not be prejudiced thereby.  10 Cyc. 286.

"The assets of an incorporated company are a trust fund for the payment of its debts, which may be followed into the hands of any person acquiring them with notice of the trust." *Jones-McDowell Co.* v. *Arkansas M. & A. Co.,* 38 Ark. 17; 1 Beach on Private Corporations, 558; see also Note 11, L. R. A. (N. S.) 1119.

It is undisputed that all the stock issued by the new company in payment for the assets of the old company was issued directly to John P. Holmes, who was the president and manager of the old company, and also the owner of all its stock and the transfer stripped the old company of all its assets, except the small amount of book accounts and deprived it of its power to continue

the business for which it was formed and it was intended by both the seller and the buyer that it should do so. It is not disputed that the old company was in financial difficulties and unable to meet its obligations and while thus indebted it entered into this contract and agreement with the new concern, transferring substantially all its assets to the new company, which was thereafter to continue the business. The new corporation, in paying for the assets of the old, did not issue its stock to the old company, nor to a trustee for the benefit of its creditors and stockholders, but directly to the stockholder owning all the stock. This stockholder does not claim to have made any adjustment of the debts of the old concern, or an equitable distribution of these assets in satisfaction thereof, but does say that he spent practically the value of all the stock so received and the proceeds of the accounts collected in payment of its debts, he, himself, being the principal debtor, in the amount of something over $9,000. He was president, business manager and owner of all the stock of the old corporation at the time of the transfer complained of; he was also president, business manager, director and owner of four-fifths of the stock of the new concern at the time of the sale and transfer and the delivery of the stock of the new corporation to him as an individual stockholder of the old corporation in payment of the property of the old corporation so transferred. He knew the indebtedness of the old company upon which judgment was obtained against it had not been paid, and he made no distribution of the proceeds realized from the sale of the assets of the old corporation to the payment of this indebtedness which should have been done and such proceeds *pro rated* among all the creditors of said old company, the law not permitting preferences among the creditors of insolvent corporations. Kirby's Digest, § 949; *Dozier* v. *Arkadelphia Cotton Mills,* 67 Ark. 11.

As against creditors, the transfer of the property to the new corporation was illegal and in fraud of their rights and they had the right to follow such trust fund

for the payment of its debts into the hands of any person purchasing with notice of the trust.

The president of the new company, its business manager, who was also a director and owner of four-fifths of its stock at the time of the transfer of the assets of the old company and the issue and delivery of the stock of the new company to him individually in payment therefor, knew of the insolvent condition of the old company; knew of the debt of appellant creditor and the new company can not be regarded as an innocent purchaser under the circumstances. Such being the case, the new corporation is bound to the payment of the creditors of the old concern to the extent of the value of the assets received therefrom without regard to whether there was any agreement to assume its obligations and the court below should have ascertained the amount of the indebtedness of the old corporation and have prorated the consideration paid by the new corporation among the creditors of the old, including appellant, if the amount of its debts were greater than the value of the assets received by the new corporation, and, under the circumstances of this case, the burden of proof devolved upon the new corporation to show such indebtedness and the proper application of the money to the payment thereof, failing in which it should have been required to pay the full amount of appellant's claim herein sued for.

Because of the error in dismissing the complaint, the judgment will be reversed and the cause remanded, with instructions to ascertain the amount that should have been prorated and distributed to appellant upon its debt upon the application of the value of the entire assets of the old corporation to the payment of all its debts and render judgment therefor against appellee company, or for the whole amount of its claim in case it can not be definitely ascertained.