## REID ICE CREAM CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.
### No. 421.

Circuit Court of Appeals, Second Circuit.
June 6, 1932.

Daniel B. Priest, of New York City (Edward N. Perkins, of New York City, of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Erwin N. Griswold, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Petitioner seeks review of an order of the Board of Tax Appeals which determined its liability as a transferee with respect to the tax of the Polar Products Company for the calendar year 1925 in the sum of $28,371.34. Petitioner denies its responsibility under section 280 of the Revenue Act of 1926 (26 USCA § 1069 and note). Review is sought pursuant to sections 1001, 1002, and 1003 of the Revenue Act of 1926, c. 27 (44 Stat. 109, 110 [26 USCA §§ 1224 and note, 1225, 1226]).

On February 7, 1925, the petitioner purchased by written agreement the assets of the Polar Products Company for $337,500. The contract provided for the sale of the assets and good will; the petitioner assumed and promised indemnity for the Polar Product Company's liabilities as of the date of the balance sheet, November 30, 1924, and subsequent liabilities incurred in the ordinary routine of business; the seller warranted against existence, as of November 30, 1924, of liabilities not shown in the balance sheet and against subsequent liabilities not incurred in the usual course of business. The seller assumed and agreed to pay "all taxes which are now due for any matter prior to January 1, 1924, and this is expressly understood and agreed to mean and include taxes of any nature whatsoever that the Seller may at any time hereafter be called upon to pay by reason of any matter occurring prior to January 1, 1924." When the sale was closed on February 16, 1925, an indemnity agreement was executed by the terms of which the petitioner agreed to assume liabilities in the following phrase:

"Said Reid Ice Cream Corporation, hereby assumes and agrees with the Company to discharge all liabilities of the Company existing on this date [February 16, 1925], * * * provided, however, that said Reid Ice Cream Corporation shall in no event be liable for the payment of any taxes which are now due for any matter prior to January 1st, 1924, * * * 'said tax liabilities for all matters prior to January 1st, 1924, being assumed by certain stockholders of said Polar Products Co., Inc.''

Following the closing of the sale, the seller distributed to its stockholders the entire purchase price received. In May, 1926, an income tax return covering the entire calendar year of 1925 was filed on behalf of the Polar Company showing the tax liability stated, but this was not paid. The respondent then proposed to assess and collect the tax from the petitioner. Neither the petitioner nor its stockholders participated in the profits of the sale. The basis of this tax is the petitioner's promise to pay the taxes of the Polar Company, which promise the petitioner is said to have given as part consideration for the transfer to it of the Polar assets. If such promise was made, respondent insists that section 280 (26 USCA § 1069 and note) permits the enforcement of the tax liability against this petitioner.

Section 280 provides that the liability of a transferee of property may be assessed and collected in the same manner as in the case of a deficiency in a tax imposed by the act. The first of the liabilities imposed by section 280 is "The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax * * * imposed upon the taxpayer by this chapter or by any prior income, excess-profits, or War-Profits Tax Act." (26 USCA § 1069.)

On this sale, the seller made a profit of 68 per cent. It is unreasonable to assume that it was the intention of the petitioner to assume the liability for the tax imposed on this profit. If liability is imposed upon the petitioner, it must be contractual and based upon a general assumption. The assumption of liability as of November 30, 1924, was based upon the warranty of the Polar Company that its only liabilities were as shown in the balance sheet of that date and those subsequently to be contracted; the Polar Company promising to incur none except in the ordinary course of business. This could not have been intended to mean liability created in the future, however remote. No time limit therefor was stipulated, and it would seem that the closing date was recognized by the parties as the point of time after which any new liabilities of the Polar Company would not concern the petitioner. At that

time there was no tax liability in existence. The liability did not exist at the closing because it was in fact a consequence of the closing itself, arising only when the sale was completed. It was not until after the sale price was in the Polar Company's possession that there was even a contingent or potential liability for the tax; there was no actual liability until the end of the calendar year. We may not construe the phrase "liabilities existing on this date" as extending beyond that date, and we think that, if the tax liability was intended to be assumed by the purchaser as a consequence at the time of closing, the parties would have made that clear. The contract establishes that the parties had in mind closing the transaction upon the balance sheet of November 30, 1924. The accuracy of that sheet was warranted by the seller, and whatever further liability was assumed was specifically stated to be that contracted in the ordinary course of business thereafter, up to the time of closing. There is no phrase in the contract which warrants the conclusion that the parties intended that the purchaser was to assume liabilities incurred outside the ordinary course of routine business. A tax on the profits of a sale such as is involved here is one of extraordinary liability, and, unless assumed in plain terms, ought not to be imposed upon the transferee of the property. When the parties spoke, they referred to the liabilities incident to the business. An income tax on the seller's profits is not a liability of the business; it is a liability which follows the sale, and the business changes hands before the tax liability arises.

Nor can tax liability be imposed under section 280. That section purports to provide a remedy for enforcement of a described liability; it does not provide a remedy against a class of people such as transferees of taxpayers' property who are liable therefor. Section 280 in the caption refers to "claims against transferred assets." The sections of this statute are indicative of their subject-matter. They provide to the government certain remedies against transferees and fiduciaries in cases embraced by the section, namely, cases of "claims against transferred assets." Where one holds assets, such as an estate or distributable fund, relative to which a tax liability exists, and transfers them without reserve for the payment of the tax, a claim arises against the transferred assets; the transferor and the transferee become liable to the extent of their receipts, and section 280 provides remedies for the enforcement of their respective liabilities. Revenue Act of 1926, §§ 280, 281, 282 (26 USCA §§ 1069 and note, 1070, 1071). Where, as in the instant case, a corporation sells its business, the properties sold are the only transferred assets, and there is no claim against those transferred assets so far as the income tax on any profit on the sale is concerned. That claim arises only on the payment of the price and relates only to the price received and not in any sense to the transferred assets. The section opens with the phrase, "the amounts of the following liabilities shall  *  *  *  be assessed, collected and paid in the same manner  *  *  *  as in the case of a deficiency in a tax imposed by this chapter.  *  *  *  *" 26 USCA § 1069. It then identifies "the following liabilities," namely, that of the fiduciary in respect to the estate's tax and that of the transferee of a taxpayer's property. Thus the enactment deals with liabilities as such, but, by coupling the liability of a transferee with that of a fiduciary, it is made evident that the nature of the liability is made the basis of the right to employ the summary procedure authorized. The section imposes a firm obligation on a fiduciary to pay the tax due from the estate. A purchaser of property for value has, in his position as a transferee, no liability to pay his vendor's tax; if he incurs such, he does so by a promise ex contractu. His liability is not the liability of the transferee but the liability of a promisor. The act deals with the peculiar liability of the transferee. Here there was no taxable fund until after the sale, and the petitioner never partook of a taxable fund because no tax liability arose except upon receipt by the seller of the purchase price. That, and not the assets sold, constitutes the taxable fund. There could not be any claim against the transferred assets. Therefore section 280 creates no liability; it is remedial and presupposes a liability for the enforcement of which it is designed to furnish a remedy. It names the liabilities, to wit, of transferees, such as legatees and other distributees, and of fiduciaries under the Revised Statutes, § 3467 (31 USCA § 192). Since there is neither liability by reason of contract nor statutory obligation, the determination below must be reversed.

Order reversed.