**REYNOLDS v. COOPER (two cases).**

**SAME v. COOPER et al.**

**Nos. 747–749.**

Circuit Court of Appeals, Tenth Circuit.
April 3, 1933.

Eldon O. Hanson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Albert D. Walton, U. S. Atty., of Cheyenne, Wyo., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., John R. Wheeler, Sp. Atty., Bureau of Internal Revenue, of Seattle, Wash., and Percia E. Miller, Sp. Atty., of Washington, D. C., on the brief), for appellant.

N. E. Corthell, of Laramie, Wyo. (A. W. McCollough and M. E. Corthell, both of Laramie, Wyo., on the brief), for appellees.

Before COTTERAL and McDERMOTT, Circuit Judges, and JOHNSON, District Judge.

McDERMOTT, Circuit Judge.

Appellees are the beneficiaries of a trust set up by the will of their father. A part of the trust estate consists of a royalty interest under an oil and gas lease on lands in Wyoming, the lease running from the father, the owner of the oil reserves. Appellees returned for income tax purposes the royalties received by them during the years 1923 to 1927, both inclusive. The trustees filed an information return only; the beneficiaries claimed the deduction for depletion, in an amount conceded to be reasonable, allowed by section 214(a) 10, Rev. Act of 1921 (42 Stat. 241), and the corresponding section 214(a) (9) in the Revenue Acts of 1924 and 1926 (26 USCA § 955(a) (9). The claim was disallowed in its entirety, the Commissioner taking the position that since the legal title stood in the name of the trustees, with directions to convert into cash at their discretion, appellees had no present or reversionary interest in the mineral estate, and were therefore not entitled to any depletion allowance. The tax was paid, under compulsion and protest, and this action brought to recover it. A jury was waived; the facts stipulated; the plaintiffs recovered, Judge Kennedy filing a memorandum opinion in which he took the common sense view that the trustees were but conduits through which the income passed in its journey from the oil fields of Wyoming to the appellees. Cooper v. Reynolds (D. C. Wyo.) 60 F.(2d) 650.

The question presented is whether a beneficial interest in oil in place will support a claim for depletion, or whether the taxpayer must be vested with a present or reversionary interest in the legal title. It is true that the legal title vested in the trustees; it is true they were directed, at a time to be selected by them, to convert the interest into cash. But it is likewise true that, during the years in question, appellees were entitled to the undiminished income from the trust, and upon conversion in their lifetime, to share in the distribution of the proceeds. No one else has any beneficial interest in the royalties producing the taxable income; no one else has or claims any depletion allowance for the capital investment returned by way of such royalties. The question therefore is, Is depletion confined to those who hold a technical legal title?

The answer is found in the decisions of the Supreme Court of the United States, and of other courts. Depletion allowances are not dependent upon technical questions of title; they rest upon a broader base. If the

taxpayer has an economic interest which is adversely affected by the production of oil, he may deduct depletion from the income received from that oil. Lynch v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660; Weiss v. Wiener, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720; Palmer v. Bender, 287 U. S. 551, 53 S. Ct. 225, 226, 77 L. Ed. ——. In the latter case, the taxpayer had assigned his lease, reserving only an overriding royalty. In the cases at bar, appellees were entitled not only to the royalty, but to share in the proceeds of a sale if made in their lifetime. Equitable estates are not barred by either the statute or decisions. Commissioner v. Molter (C. C. A. 10) 60 F.(2d) 498; Merle-Smith v. Commissioner (C. C. A. 2) 42 F.(2d) 837, certiorari denied 282 U. S. 897, 51 S. Ct. 182, 75 L. Ed. 791. In the latter case, the equitable interest was subject to extinction, but the taxpayer was held entitled to depletion while the interest lasted. To the same effect, see Kuhn v. Commissioner, 24 B. T. A. 216; Alphin v. Commissioner, 21 B. T. A. 1101.

The decision of the Supreme Court of the United States in Anderson v. Wilson (U. S.) 53 S. Ct. 417, 77 L. Ed. —— is cited by the appellant as opposed. There, as here, the legal title to the properties was in testamentary trustees; there, as here, the taxpayer was the beneficiary of the trust. The loss there was a capital loss arising from the sale of real estate by the trustees. It was held that the loss fell upon the trustees and not the beneficiary, and that the trustees were entitled to the deduction in their income tax return.

There is language in the Anderson Case which, taken out of its setting, supports the contention of appellant. The Supreme Court, however, sees no conflict between its opinion in the Anderson Case and its opinion in Palmer v. Bender, handed down two months earlier, for the Palmer Case is not cited, much less overruled. It is neither necessary nor proper for an inferior court to suggest a conflict where the Supreme Court has suggested none, nor, having suggested it, undertake to demonstrate its nonexistence. It may not be impertinent, however, in reply to appellant, to note that there is no irreconcilable inconsistency between the two decisions. One dealt with capital losses, and held that the loss follows the title; the other dealt with depletion of minerals by the production which gave rise to the income, and held that questions of title were not controlling. In the Anderson Case, the trust was a taxpayer, entitled to claim the capital loss; in the case at bar, the trust made no return except for the information of the Commissioner.

It will be enough for us to decide which of the two cases controls the cases at bar. Fortunately, that decision is not a difficult one. The Palmer Case deals with the identical statute with which we are confronted. It deals with the depletion of oil reserves, as do our cases. In the Palmer Case, the taxpayer had no title either to the lease or the real estate; all he had was a contractual right to receive a part of the oil produced under a lease owned by another, from real estate owned by a third. In our cases, the taxpayers have a testamentary right to receive a part of the oil produced under a lease owned by others—the trustees—plus a right to share in the proceeds of the royalty when and if sold. The legal questions presented are identical, except in so far as the appellees' case here is strengthened by their reversionary right. In the Palmer Case the court declined to consider refinements of title. The court said:

"It has been elaborately argued at the bar and in the briefs whether under Louisiana law the two instruments are assignments or subleases. We do not think the distinction material. Nothing in section 214(a) (10) indicates that its application is to be controlled or varied by any particular characterization by local law of the interests to which it is to be applied. * * * The formal attributes of those instruments or the descriptive terminology which may be applied to them in the local law are both irrelevant."

The court then considered whether the depletion statute was confined to any form of legal ownership, and gave its answer in these words:

"The allowance to the taxpayer is not restricted by the words of the statute to cases of any particular class or to any special form of legal interest in the oil well. * * * The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital. That the allowance for depletion is not made dependent upon the particular legal form of the taxpayer's interest in the property to be depleted was recognized by this Court in Lynch v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660. * * * Similarly, the lessor's right to a depletion

allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. It is enough if by virtue of the leasing transaction he has retained a right to share in the oil produced. If so, he has an economic interest in the oil, in place, which is depleted by production. Thus we have recently held that the lessor is entitled to a depletion allowance on bonus and royalties, although by the local law ownership of the minerals in place passed from the lessor upon the execution of the lease. * * * Thus throughout their changing relationships with respect to the properties, the oil in the ground was a reservoir of capital investment of the several parties, all of whom, the original lessors, the two partnerships, and their transferees, were entitled to share in the oil produced. Production and sale of the oil would result in its depletion and also in a return of capital investment to the parties according to their respective interests. The loss or destruction of the oil at any time from the date of the leases until complete extraction would have resulted in loss to the partnerships. Such an interest is, we think, included within the meaning and purpose of the statute permitting deduction in the case of oil and gas wells of a reasonable allowance for depletion according to the peculiar conditions in each case."

This considered language, dealing with the particular statute here involved, is broad and unmistakable. The decision itself allowed depletion to one who had much less economic interest in the oil reserves than the appellees here. In the cases at bar, unlike the Anderson Case, it is not a question of which taxpayer gets the allowance; in our cases, the depletion actually suffered by the royalty interest must be allowed to appellees or no allowance therefor made. We cannot ignore the Pamer Case because of a supposed conflict between it and a later case dealing with another statute.

■ The Palmer Case and its progenitors do no more than apply, to a new situation, the accepted philosophy that taxation is an intensely practical matter, and questions must be determined according to the truth and substance of the transaction, and not by the form it took. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Bowers v. Kerbaugh-Emp. Co., 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886. The law recognizes equitable estates for the purpose of paying income taxes, Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897; Anderson v. Wilson, supra; likewise it should and does recognize them for proper deductions from that income. The allowance claimed here was essentially just, for every barrel of oil produced lessened the eventual sale price of the property in which appellees may share; such production in fact depleted the reservoir of oil in which appellees had a substantial economic interest.

■ There is a subsidiary point, of minor importance, in No. 748. John Hartshorn Cooper, a brother of Barbara V. Cooper and one of the beneficiaries of the trust created by their father's will, died in 1921. Barbara inherited part of her brother's interest in the royalties in question. His estate was closed on September 13, 1923. The estate was, therefore, the taxpayer until September 13, 1923, and Barbara was the taxpayer after that date. Bankers' Trust Co. v. Bowers (C. C. A. 2) 295 F. 89, 31 A. L. R. 922; Hoeper v. Tax Commission, 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248. The Commissioner apportioned the 1923 income between the two taxpayers according to the number of days included in each of the periods in question. The propriety of such method of apportionment if the Commissioner is unable to determine the actual income received by each of the taxpayers, is not questioned. On the other hand, the Commissioner should assess the income actually received by each of the taxpayers if it can be ascertained. Rules of thumb should only be resorted to in case of necessity, for the actual is always preferable to the theoretical. Doyle v. Mitchell Brothers Co., 247 U. S. 179, 187, 38 S. Ct. 467, 62 L. Ed. 1054; Howbert v. Penrose (C. C. A. 10) 38 F.(2d) 577, 68 A. L. R. 820.

■ The point in disagreement is whether the record discloses that the Commissioner erred in resorting to an apportionment—that is, was the actual income of each taxpayer readily ascertainable? The record is not entirely satisfactory on the point, but the petition alleges that the Commissioner added to the appellee's taxes for the year 1923, the difference between the income actually received by her, and the amount which would have been received by her if the income for the entire year had been prorated according to the calendar. This allegation is expressly admitted by the answer. The stipulation of facts recites that for the year 1923 the Commissioner's determination rested in part upon the "difference between the actual gross receipts as returned by the plaintiff, and the

gross receipts as determined by the Commissioner by apportionment." In addition to the pleadings and the stipulation of facts, it is a matter of common knowledge that a record is kept of oil runs, both by the producing companies and by the pipe line purchasers as the oil is marketed. From these records, a close approximation can be had as to the amount of production in any period of time. Furthermore, in all human probability, the trustees of this estate kept an accurate record of disbursements made by them to the estate of John Hartshorn Cooper, as well as an accurate record of the disbursements made to Barbara V. Cooper. We therefore conclude that there is substantial evidence in the record to support the finding of the trial court on this question of fact.

Appellant filed a supplemental reply brief upon the question of interest, the contention being that because of section 319 of the Economy Act of June 30, 1932 (26 USCA § 2614a), the interest on this judgment should be reduced from 6 per cent to 4 per cent, at least after the effective date of the Economy Act. Huwe v. Ohmer Fare Register Company, (C. C. A. 6) 61 F.(2d) 721; Caraleigh Phosphate & Fertilizer Works v. United States (Ct. Cl.) 1 F. Supp. 854. The point passes out of the case by virtue of section 2 of the First Deficiency Act of January 30, 1933. Title 2, § 2 of that Act provides that "Section 319 of the Act of June 30, 1932, * * * shall not apply to any judgment rendered against the United States prior to July 1, 1932."

The judgments are affirmed.