**PRAIRIE OIL & GAS CO. v. MOTTER,**
Collector of Internal Revenue.

No. 784.

Circuit Court of Appeals, Tenth Circuit.
July 13, 1933.

Earl W. Shinn and H. B. McCawley, both of Washington, D. C. (T. J. Flannelly, of Independence, Kan., Paul B. Mason, of Tulsa, Okl., and Root, Clark & Buckner, of New York City, on the brief), for appellant.

D. A. Taylor, of Washington, D. C. (Sardius M. Brewster, U. S. Atty., and L. E. Wyman, Asst. U. S. Atty., both of Topeka, Kan., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Charles K. Hoover, Sp. Atty., Internal Revenue, both of Washington, D. C., on the brief), for appellee.

John E. McClure, amicus curiæ.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

Some time prior to 1926 the Olean Petroleum Company acquired producing oil properties at a cost of about $300,000. In 1926 the Prairie Oil & Gas Company acquired these properties for a cash outlay of $3,350,-000. The question in this case is whether depletion of such properties should be calculated on their cost to the Prairie of $3,350,000, or their original cost to the Olean of $300,000. The facts are not in dispute.

On March 8, 1926, a contract was entered into between the Prairie as buyer and the Olean and its stockholders as sellers which recites that its purpose is to transfer the leases owned by the Olean which were producing or in the process of development, together with appurtenant equipment, for the sum of $3,350,000 cash. The contract provided that the "delivery of said physical properties" should be made as of March 3, five days before the contract was signed. Alternative methods of effecting the transfer of such physical properties were provided for—one by the transfer of the properties themselves, the other by a transfer of the corporate stock within 25 days. In either event, the Olean, or its stockholders, retained the intangible assets of the Olean, amounting to over $700,000 in cash and accounts; the Prairie acquired only the described physical property for the price agreed upon.

The Prairie went into possession and paid the $3,350,000 to Larkin and Quigley, the authorized agents of the Olean and its stockholders. For reasons not disclosed by the record, the sellers availed themselves of the right to accomplish the purpose of the contract—the sale of the leases—by stripping the corporation of all its assets except the leases and transferring its outstanding shares to the Prairie on April 1; on April 2 the Olean Company conveyed such leases and equipment to the Prairie and was on that day dissolved.

■ The right to an allowance for depletion is a matter of grace on the part of the taxing power, and one claiming it must establish its right thereto. Darby-Lynde v. Alexander, Com'r of Internal Revenue (C. C. A. 10) 51 F.(2d) 32. Section 204 (c), Revenue Act 1926 (26 USCA § 935 (c), provides that the basis for the depletion allowance shall be the same as is provided in subdivision (a) for the purpose of determining gain or loss upon the sale of property. Turning to subdivision 204 (a) of the act (26 USCA § 935 (a), we find that basis to be "the cost of such property," which in the case at bar is concededly $3,350,000. Unless the case is brought within one of the exceptions noted in 204 (a), then, the Prairie is clearly entitled to compute its depletion on the amount actually expended by it in acquiring the properties.

The collector maintains that the case falls within section 204 (a) (7), of the act, 26 US CA § 935 (a) (7), which excepts from the cost basis properties acquired by a corporation "in connection with a reorganization."

Counsel for the collector contends that Congress can ascribe any definition to any word, and that such definition becomes the meaning of that word for the purposes of that act; and that, however incongruous it may appear on its face, Congress has so defined "reorganization" as to include this transaction. He refers to section 203 (h) (1), of the act, 26 US CA § 934 (h) (1), which defines "reorganization" as follows: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred."

The argument is that a "reorganization" results from any transaction by which one corporation acquires substantially all the stock or properties of another, even for cash. If the words in parenthesis may be separated from the principal words "merger or consolidation" which precede them, the conclusion follows, for the Prairie did acquire substantially all of the properties of the Olean as well as its stock. The cost to the government of such a literal interpretation would be staggering, for the statute contemplates that neither gain nor loss shall be recognized in a transfer of properties to effect a reorganization; and if reorganization includes sales for cash, the tax on corporate capital gains could be easily avoided.

While the words in parenthesis must be considered, the words outside may not be disregarded. While the parenthetical words must be construed as specifying certain transactions which should be held to be within the general meaning of "merger or consolidation," they cannot be construed to so extend the ordinary meaning of merger and consolidation as to include outright purchases of property for cash. Reading all the sections exempting from tax transfers made to accomplish reorganizations, the congressional intent is plain. Where a merger or consolidation takes place, and the stockholders retain their interest in the corporate properties, there is no realized gain; there is but a substitution of their certificates of participation. Such transfers were exempted from tax so that such reorganizations should not needlessly be

impeded. The congressional intent appears from the report of the Finance Committee to the Senate, which reads in part:

"Congress has heretofore adopted the policy of exempting from tax the gain from exchanges made in connection with a reorganization, in order that ordinary business transactions will not be prevented on account of the provisions of the tax law. If it is necessary for this reason to exempt from tax the gain realized by the stockholders, it is even more necessary to exempt from tax the gain realized by the corporation."

That the statutory definition of "reorganization" cannot be stretched to exempt from taxation gains resulting from a sale of properties for cash, is settled by the decision of the Supreme Court of the United States in Pinellas Ice Co. v. Commissioner, 287 U. S. 462, 53 S. Ct. 257, 260, 77 L. Ed. 428, wherein the court said:

"But the mere purchase for money of the assets of one company by another is beyond the evident purpose of the provision, and has no real semblance to a merger or consolidation. Certainly, we think that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes. This general view is adopted and well sustained in Cortland Specialty Co. v. Commissioner of Internal Revenue (C. C. A.) 60 F. (2d) 937, 939, 940. It harmonizes with the underlying purpose of the provisions in respect of exemptions and gives some effect to all the words employed."

In Cortland Specialty Co. v. Commissioner (C. C. A. 2) 60 F.(2d) 937, 939, cited with approval in the above quotation, the taxpayer made the same contention as is made here by the collector; the Commissioner there took the position here taken by the taxpayer. The Second Circuit Court of Appeals held that the term "reorganization" could not have included "mere purchases by one company of the assets of another." It held that mergers and consolidations contemplate that the interests of the stockholders are retained in the surviving or newly created company, and said that "a sale of the assets of one corporation to another for cash without the retention of any interest by the seller in the purchaser is quite outside the objects of merger and consolidation statutes." Certiorari was denied, 288 U. S. 599, 53 S. Ct. 316, 77 L. Ed. ——. See Sarther Grocery Co. v. Commissioner (C. C. A. 7) 63 F.(2d) 68; Minnesota Tea Company v. Commissioner, 28 B. T. A. ——;

"Definition of Reorganization," Homer Hendricks, 45 Harv. Law Rev. 648.

These authorities leave no doubt that a purchase for cash of all the properties of one corporation by another cannot be considered as a reorganization, merger or consolidation of the two companies.

To avoid this conclusion the collector then undertakes to separate the component parts of this single transaction. He ignores the fact that the contract declares the purpose of the transaction to be the acquisition of the leases; that possession of the leases was delivered as of a date prior to the contract; that the Olean had $700,000 of other assets not bargained for or acquired; that the stock was delivered under an optional arrangement to accomplish the transfer of the leases; and that the charter was surrendered the day after the stock was delivered. His position is that the court should close its eyes to the events prior to April 1st, and consider only the fact that the Prairie owned all the Olean stock on that day; that it then transferred to the Prairie all its properties in consideration of a cancellation of its stock. If a taxpayer sought to avoid a tax on the profits of such a sale as this by asking the Commissioner to ignore the actualities, he would shortly and properly be reminded that taxation is an intensely practical matter and that the substance of the thing done, and not the form it took, must govern. A similar effort to treat two steps in a single transaction as two separate transactions was rejected by this court in Tulsa Tribune Co. v. Commissioner, 58 F. (2d) 937, 940, wherein we said:

"As it seems to us, the attempt to break this transaction up into two elements by saying that Jones bought the property and then transferred it to the corporation in exchange for its capital stock is not only unfair, but untrue."

In Carter Publications v. Commissioner, 28 B. T. A. ——, the sale of properties was accomplished by the two steps of a transfer of stock followed by a dissolution. The Board of Tax Appeals held:

"In the circumstances herein some of petitioner's stockholders took legal title to the stock of the Fort Worth Record Co., but only for the purposes of carrying out the agreement with Hearst. * * * The whole series of acts, corporate and otherwise, constituted only a single transaction in which the petitioner purchased certain tangible assets for cash."

But even if the transaction of April 1st be separated from its origin, and the case turn

on the events of that day, the collector is still forced to a strained construction of the statutes to arrive at the conclusion that the liquidation of the Olean Company is a "reorganization" of that company within the meaning of the exemption. That point need not be pursued in view of our disposition to treat the transaction as an entire one.

Since the decision in the court below the Board of Tax Appeals has been presented with the precise question here involved. In Warner Company v. Commissioner, 26 B. T. A. 1225, the buyer, in July, acquired all of the stock of a corporation for cash and preferred stock of the buyer. In the fall of that year the preferred stock was repurchased, and in December the buyer dissolved the subsidiary and took title to the properties. It was held that the basis for depletion was the price paid for the stock. The Board said:

"It appears from the contract under which the taxpayer acquired the stock that the primary purpose of the transaction was to insure to the taxpayer an adequate supply of sand and gravel. Obviously, the most direct method of accomplishing this end would be to purchase sand and gravel deposits. Presumably this direct method was not feasible and so it adopted the plan set forth at the outset of this opinion. That plan, as carried out, was in substance and effect a purchase of stock for cash, followed by a cancellation of the stock and liquidation and dissolution of the companies owning the properties that the taxpayer wanted. * * * This, in our opinion, was not a reorganization within the purview of the statute, but rather is analogous to the situations present in the Pinellas Ice and Cortland Specialty Co. Cases, supra, which were held to be sales rather than nontaxable reorganizations. * * * We conclude that the transactions in 1924 whereby the taxpayer acquired the assets of the Penn and Manor Companies did not constitute a reorganization, but that the liquidation of the companies following the acquisition of their stock was a transaction on which gain or loss is recognized by the statute, and the taxpayer is entitled to use cost of the assets to it as a basis for depreciation and depletion."

We arrive at the same result if we take a long view of the case. The clear intent of the statute is to allow depletion based on actual cost to the taxpayer. The purpose of the "reorganization" exception is to prevent that base from being increased by transactions which are not actual purchases but merely transfers to effect a rearrangement of ownership. Here the actual cost of these leases was $3,350,000 paid in cash. Congress intended that such cost should be the depletion base. The contention of the collector that the cost to the Olean should be the depletion base can only be sustained if it be true that the Olean merged or consolidated with the Prairie. It did not; it sold out to the Prairie. It is suggested that by taking two steps, the Olean Company avoided the payment of a tax on the profits of the sale. But its stockholders were taxable on the profit realized from the sale of their stock; so the government has had its tax on the profits on the sale. It may be it could have collected two taxes if the Olean Company had sold the properties and then liquidated; or the double tax may have been avoided by conveying its properties to its stockholders and they in turn conveying to the Prairie. But these considerations are not sufficient to justify a court in calling an outright sale a reorganization.

The plaintiff, on the admitted facts, is entitled to judgment. The cause is reversed for further proceedings in accordance with this opinion.

Reversed.