## WEST TEXAS REFINING & DEVELOPMENT CO. v. COMMISSIONER OF INTERNAL REVENUE.

## COL–TEX REFINING CO. v. SAME.

### Nos. 815, 816.

Circuit Court of Appeals, Tenth Circuit.

Dec. 19, 1933.

78

Chas. H. Garnett, of Oklahoma City, Okl., for petitioners.

Norman D. Keller, Sp. Asst. to Atty. Gen. (Pat Malloy, Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

On June 2, 1925, the West Texas Refining & Development Company, a Delaware corporation, and its stockholders, the Hickok Producing Company and the Anderson-Prichard Oil Company, entered into a contract with the Standard Oil Company of California, whereby they agreed to transfer to the Standard Company 50% of the capital stock of a corporation owning the refinery, pipe lines, and gathering lines then owned by the West Texas Company. The Standard Company agreed to pay $72,000 for such stock, and in addition thereto 50% of the cost of certain improvements to be made thereafter.

At a meeting of the stockholders of the West Texas Company held on September 3, 1925, a so-called plan of reorganization was adopted. This plan provided that the West Texas Company should transfer its refinery, pipe lines, gathering lines, and pumping stations to the Col-Tex Refining Company in consideration of 2,000 shares of its capital stock of the par value of $100 a share, and the payment of $72,000 in cash, and the further payment of one-half of the cost of such improvements; that the cash received together with any other assets should be applied to satisfy, as far as possible, West Texas Company's debts; and, subject to the payment by its stockholders ratably of its remaining debts, the Col-Tex Company stock to be received should be distributed as a dividend.

On September 3, 1925, the stockholders of the Col-Tex Company, a Delaware corporation, met and elected a board of directors.

Thereupon such directors held a meeting, elected officers, and formally accepted the plan adopted by the West Texas Company. Following this another meeting of the directors of the Col-Tex Company was held at which it was reported that the Standard Company had offered to purchase 2,000 shares of its capital stock for the amount of cash the Col-Tex Company had that day obligated itself to pay to the West Texas Company. A resolution was passed accepting that offer. Five of the directors of the Col-Tex Company then resigned and new directors were elected. Of the new directors, two were stockholders and officers in the Hickok Company, and three were representatives of the Standard Company. By proper corporate action, deeds of conveyance, and bills of sale, the properties were transferred to the Col-Tex Company, and Col-Tex Company stock was issued to the West Texas Company and the Standard Company. Such stock was not delivered to the Standard Company until September 19, 1925. On that date the Standard Company paid the Col-Tex Company $184,771.34 in cash, which in turn paid it to the West Texas Company. This money together with advances made by the stockholders of the West Texas Company, was used to pay all its known debts and liabilities. The 2,000 shares of Col-Tex Company stock were then distributed as a dividend to stockholders of the West Texas Company.

The assets acquired from the West Texas Company were set up on the Col-Tex Company's books as follows:

Refinery land.................... $3,103.50
Refinery equipment............ 172,407.56
Pipeline land.................... 342.50
Pipeline equipment............. 139,116.24
Good-will .................... 85,030.20

The evidence shows that the amount set up for good-will was a balancing figure rather than a good-will value. The other amounts are cost to the West Texas Company, less sustained depreciation.

In January, 1929, the commissioner assessed against the West Texas Company an additional tax of $7,574.44. In a deficiency letter dated February 11, 1929, the commissioner held that the above transaction amounted to a sale by the West Texas Company of its assets, and that, measured by the difference between the cost of $325,940.73 and the sale price of $384,771.34, a profit of $58,830.61 had been realized. The sale price was arrived at by taking the 2,000 shares of stock of the Col-Tex Company at $100 a

share, and adding to that the amount of cash received. Liability was asserted against the Col-Tex Company as transferee. Both companies filed petitions with the Board of Tax Appeals. The cases were consolidated. The board held that the transaction amounted to a sale, and that the Col-Tex Company was liable for the tax resulting therefrom, as transferee of the assets of the West Texas Company.

### No. 815.

Counsel for the petitioners contends that the transaction between the two companies falls within the exceptions enumerated in section 203 of the Revenue Act of 1926 (44 Stat. 12, 26 USCA § 934), and that therefore no gain should have been recognized as arising therefrom.

The material portions of section 203 read as follows:

"(a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202 [section 933 of this title], shall be recognized, except as hereinafter provided in this section.

"(b) * * * (3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization. * * *

"(e) If an exchange would be within the provisions of paragraph (3) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

"(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

"(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which is not so distributed. * * *

"(h) As used in this section and sections 201 and 204 [sections 932 and 935]—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a

majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

"(i) As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

It is argued that immediately after the transfer of the properties to the Col-Tex Company by the West Texas Company the latter owned all the outstanding stock of the Col-Tex Company, since the stock issued to the Standard Company was not delivered until sixteen days later, and therefore the transfer to the Col-Tex Company was a reorganization within the definition thereof in section 203 (h) (1). The assertion, while technically correct, overlooks other facts which disclose the real situation.

The West Texas Company and its stockholders entered into a contract with the Standard Company in June, 1925, for the sale of one-half of the stock of a corporation owning the physical assets of the West Texas Company. This contract contemplated the organization of the Col-Tex Company and the sale and issuance of its stock to the Standard Company and the West Texas Company in equal proportions. The contract further contemplated a sale by the West Texas Company of its physical assets for a substantial sum in cash. The Col-Tex Company upon coming into existence agreed to purchase those assets for 2,000 shares of its capital stock and a certain amount in cash. On the same day it also agreed to sell one-half of its capital stock to the Standard Company for the same amount of cash. The whole transaction was the means adopted to carry out the contract between the West Texas Company and the Standard Company.

In substance it was but one single transaction. In Prairie Oil & Gas Co. v. Motter (C. C. A. 10) 66 F.(2d) 309, 311, this court said:

"If a taxpayer sought to avoid a tax on the profits of such a sale as this by asking the Commissioner to ignore the actualities, he would shortly and properly be reminded that taxation is an intensely practical matter and that the substance of the thing done, and not the form it took, must govern."

In Tulsa Tribune Co. v. Commissioner (C. C. A. 10) 58 F.(2d) 937, 940, this court said:

"As it seems to us, the attempt to break this transaction up into two elements by saying that Jones bought the property and then transferred it to the corporation in exchange for its capital stock is not only unfair, but untrue."

The purpose of section 203, supra, was to relieve corporations from profits taxes in cases where there is only a change in corporate form without an actual realization of any gain from an exchange of properties. It is intended to apply to cases where a corporation in form transfers its property, but in substance it or its stockholders retain the same or practically the same interest after the transfer. See Cortland Specialty Co. v. Commissioner (C. C. A. 2) 60 F.(2d) 937, 940; Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, 53 S. Ct. 257, 77 L. Ed. 428; Id. (C. C. A. 5) 57 F.(2d) 188.

■ Here it was contemplated that in substance the West Texas Company should dispose of its assets and receive therefor a cash consideration, and also stock. What was done amounted to a single transaction for income tax purposes, and when it was fully consummated the West Texas Company had received only a 50% stock interest in the Col-Tex Company and $184,771.34 in cash. Therefore the transaction was not within the exceptions defined in section 203, supra, and must be considered as a sale.

Assuming, but not deciding, that the transaction was a reorganization within the meaning of section 203 (b) (3), then the effect of section 203 (e)(2) must be considered. Where there is a corporate reorganization and a transfer of the assets of the old corporation to the new corporation and an exchange of the interests of the stockholders in the old corporation for like or substantially like interests in the new corporation, there is in substance no closed transaction and no gain. But where a consideration has been paid for such transfer of assets and not distributed to the stockholders of the old corporation and hence not reflected in their individual tax returns, but paid to the old corporation and used by it to pay debts, unless the gain realized to the extent not distributed to the stockholders of the old corporation is made taxable, a realized gain would escape taxation; hence the provisions of section 203 (e)(1 and 2).

■ Since the cash payment, not distributed to the stockholders of the West Texas Company, was more than the profit realized on the transaction, the whole profit was taxable as income to the West Texas Company under the provisions of section 203 (e)(2).

The judgment in this case is affirmed.

### No. 816.

The question here presented is whether the Col-Tex Company is liable for the taxes assessed against the West Texas Company as transferee, under the provisions of section 280 of the Revenue Act of 1926 (44 Stat. 61, 26 USCA § 1069), which reads as follows:

"(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds).

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter or by any prior income, excess-profits, or War-Profits Tax Act."

The profit here arose because of a sale by the West Texas Company to the Col-Tex Company; otherwise there could have been no primary tax liability against the former. The taxable gain to the West Texas Company arose out of and as a result of the sale, and was therefore non-existent before the sale. This gain to the West Texas Company was a part of the consideration received for the sale, and not a part of the assets transferred as the subject-matter of the sale. Hence no tax lien arose against the assets transferred. See Reid Ice Cream Corp. v. Commissioner (C. C. A. 2) 59 F.(2d) 189,

191. The transferees here were the stockholders of the West Texas Company, and not the Col-Tex Company.

■ The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor. Racine E. & M. Co. v. Confectioners' M. & M. Co. (C. C. A. 7) 234 F. 876, 879; Ozan Lumber Co. v. Davis Sewing M. Co. (D. C. Del.) 284 F. 161, 164; Drovers' & Mechanics' Nat. Bank v. First Nat. Bank (C. C. A. 4) 260 F. 9, 14, 15; Burkholder v. Okmulgee Coal Co., 82 Okl. 80, 196 P. 679; Cooper v. Utah Light & Ry. Co., 35 Utah, 570, 102 P. 202, 136 Am. St. Rep. 1075; Colorado Springs R. T. R. Co. v. Albrecht, 22 Colo. App. 201, 123 P. 957; Fletcher Cyc. Corporations (Perm. Ed.) vol. 15, § 7122.

To this general rule there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts. Lumber Co. v. Sewing Machine Co., supra; Spring Creek Oil Corp. v. Dillman, 90 Okl. 129, 215 P. 1053; Luedecke v. Des Moines Cabinet Co., 140 Iowa, 223, 118 N. W. 456, 32 L. R. A. (N. S.) 616; Valley Bank v. Malcolm, 23 Ariz. 395, 204 P. 207; Swing v. Empire Lbr. Co., 105 Minn. 356, 117 N. W. 467; Fletcher Cyc. Corporations (Perm. Ed.) § 7122.

There was no express or implied contractual obligation on the part of the Col-Tex Company to pay the debts of the West Texas Company.

There is no contention that the transfer to the Col-Tex Company was made to defraud either past or future creditors of the West Texas Company. Indeed, the transfer was made in good faith for a valuable, fair, and adequate consideration, and the contract provided that there should be no distribution of the proceeds of the sale to the stockholders of the West Texas Company until its debts were satisfied.

There was no consolidation or merger of the two corporations.

It follows that if the Col-Tex Company became liable for the debts of the West Texas Company, it was because the Col-Tex Company was not a new and independent corporation, but merely a continuation of the West Texas Company under a new name. It would seem both incongruous and unjust to treat them as independent corporations and the transaction as a sale, as a basis for the conclusion that a taxable corporate gain was realized by the West Texas Company, and as the same corporation reorganized under a new name as a basis for imposing liability for the tax on the Col-Tex Company.

■ Where the entire consideration for the transfer is stock of the transferee corporation and the stock is delivered to the stockholders of the transferor, or it is contemplated that it will be distributed to them, leaving the transferor corporation without means to respond to its creditors, the transferee corporation is liable for the debts of the transferor. Wesco Supply Co. v. El Dorado L. & W. Co., 107 Ark. 424, 155 S. W. 518; Shadford v. Detroit Y. & A. A. Ry., 130 Mich. 300, 89 N. W. 960; Grenell v. Detroit Gas Co., 112 Mich. 70, 70 N. W. 413; Fletcher Cyc. Corporations (Perm. Ed.) § 7127.

In certain jurisdictions it has been held that the fact that only shares of stock of the purchasing corporation were received as a consideration for the transfer by the selling corporation, is not of itself sufficient to make the former liable for the debts of the latter. Lumber Co. v. Sewing M. Co., supra; Homestead Mining Co. v. Reynolds, 30 Colo. 330, 70 P. 422. This is the rule in Delaware, where both of these corporations were organized. Lumber Co. v. Sewing M. Co., supra; Fletcher Cyc. Corporations (Perm. Ed.) § 7127.

In American Ry. Express Co. v. Commonwealth, 190 Ky. 636, 228 S. W. 433, 437, 30 A. L. R. 543, the court said:

"It is equally well settled that when the sale is a bona fide transaction, and the selling corporation receives money to pay its debts, or property that may be subjected to the payment of its debts and liabilities, equal to the fair value of the property conveyed by it, the purchasing corporation will not, in the absence of a contract obligation or actual fraud of some substantial character, be held responsible for the debts or liabilities of the selling corporation."

■ Here one-half of the capital stock of the Col-Tex Company was issued and sold for cash. Fifty per cent. of its stockholders were entirely new. The cash received for the sale of the stock was paid to the West Texas Company as one-half of the considera-

tion for the transfer of the assets, and was to be used by it to discharge its debts. The remaining fifty per cent. of the stock of the Col-Tex Company was paid as the balance of the consideration for the transfer, not to the stockholders of the West Texas Company but directly to the West Texas Company, and upon the express condition that it should not be distributed to the stockholders of the latter corporation until they had advanced sufficient money to pay all of its indebtedness. The Col-Tex Company, in our opinion, was not a mere continuation of the West Texas Company, but a new and independent corporation. The transfer of the assets in no wise prejudiced the claims of creditors of the West Texas Company because full value was paid, and express and ample provision was made for the payment of such claims. Under these circumstances, it is our opinion that no creditor, past or future, of the West Texas Company had any right, legal or equitable, to assert his claim against the Col-Tex Company.

The judgment in this case is reversed.

BRATTON, Circuit Judge (dissenting).

I am unable to join in the conclusion reached by the majority respecting No. 816.

The facts are that under date of June 2, 1925, West Texas Refining & Development Company, Hickok Producing Company, J. S. Anderson, A. S. Close, A. S. Hickok, and L. H. Prichard, on the one hand, and Standard Oil Company of California, on the other, entered into a written contract. Hickok and Anderson were president and secretary, respectively, of West Texas Company, also of Anderson-Prichard Oil Corporation, a stockholder in West Texas Company. Hickok and Close were president and secretary, respectively, of Hickok Refining Company, likewise a stockholder in West Texas Company. The contract provided that Anderson, Close, Hickok, and Prichard would transfer, or cause to be transferred, to Standard Company, 50 per cent. of the capital stock of a corporation owning the refinery, pipe lines, and gathering lines then the property of West Texas Company; also that they would transfer, or cause to be transferred, to Standard Company the entire undivided one-half interest of West Texas Company in certain mineral leases in the oil field near Colorado, Tex.; that Standard Company would pay $72,000, plus one-half of the cost of extra development and improvement of the refinery properties, for the stock, and $210,000 for the leases. Payment for the stock was to be made on September 1, 1925, and payment for the leases was to be made on the transfer thereof with approval of title.

Subsequent to the execution of the contract and for the obvious purpose of effecting the sale, Col-Tex Company was incorporated under date of August 24, 1925. The refinery, pipe lines, and gathering lines were transferred to that company. It issued two thousand shares of stock to West Texas Company. It issued a like amount to Standard Company. Acting as a clearing house, it received from Standard Company $184,771.34 in cash, and immediately paid it to West Texas Company. The Commissioner found that the assets thus transferred by West Texas Company to Col-Tex Company were of the value of $314,969.80. I think that finding should be sustained. West Texas Company received therefor $184,771.34—an amount insufficient to pay the debts of that company—and capital stock of undetermined value of Col-Tex Company. The cash was provided by Standard Company. West Texas Company applied the cash to payment of its debts and distributed the stock among its stockholders on the basis of one share for each share owned in that company. After such payment and distribution it owned no property or assets of any kind.

The predominant purpose of the whole scheme from its inception to its conclusion was to effect a sale from West Texas Company to Standard Company. Each preliminary and intermediate step was to achieve that end. Everything done was in furtherance of that purpose exactly as the parties contemplated from the outset. Every act in the play occurred in proper and ordered sequence, each player coming on the scene and performing his part in strict accordance with the will understood and common purpose of all parties concerned with the transaction.

Having divested itself of all assets, as contemplated from the outset, West Texas Company is unable to pay the tax. Col-Tex Company, having full knowledge of all the facts, not only acted in close concert with West Texas Company to achieve that end, but was a conduit through which to accomplish it. West Texas Company contends in the companion case that the transaction was merely a corporate reorganization with no tax due. Failing in that contention, Col-Tex Company asserts here that it is not liable. The substance of the transaction, not its form, should be decisive. Tulsa Tribune Co. v. Commissioner (C. C. A. 10) 58 F.(2d)

937; Reynolds v. Cooper (C. C. A. 10) 64 F.(2d) 644; Prairie Oil & Gas Co. v. Motter (C. C. A. 10) 66 F.(2d) 309.

It is my belief that the case should be affirmed.